NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11540


 CITY OF SPRINGFIELD  vs.  CIVIL SERVICE COMMISSION & another.[1]



        Hampden.      April 8, 2014. - August 18, 2014.

 Present:  Ireland, C.J., Spina, Cordy, Botsford, Gants, Duffly,
                    & Lenk, JJ.[2]


Civil Service, Provisional promotion, Termination of employment,
     Notice.  Labor, Civil service.  Employment, Termination.
     Jurisdiction, Civil Service Commission.  Administrative
     Law, Evidence.  Notice, Termination of employment,
     Administrative hearing.  Waiver.


     Civil action commenced in the Superior Court Department on
July 29, 2010.

     The case was heard by Bertha D. Josephson, J. on motions
for judgment on the pleadings.

     The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.

     Maurice M. Cahillane, Jr. (William E. Mahoney with him) for
city of Springfield.
     Andrew M. Batchelor, Assistant Attorney General, for Civil
Service Commission.
     Bart W. Heemskerk for Joseph McDowell.

---

     [1] Joseph McDowell.

     [2] Chief Justice Ireland participated in the deliberation on
this case prior to his retirement.

BOTSFORD, J.  Joseph McDowell was hired by the city of Springfield (city) in 1987 as a skilled laborer, and soon thereafter achieved the status of a permanent, tenured civil service employee of the city.  In 1993, he received the first of two provisional promotions;[3] he worked in the second of these provisional positions until 2005, when the city terminated his employment.  One issue we consider in this appeal is whether, despite being terminated from his provisional position, McDowell was entitled to appeal his termination pursuant to the relevant provisions of the civil service statute, G. L. c. 31, §§ 41-45; agreeing with the Civil Service Commission (commission), we conclude that he was.  We also consider whether the commission, in deciding McDowell's appeal, permissibly could consider that subsequent to the city's discharge of McDowell, he had been indicted and then pleaded guilty to the crime of filing false tax returns.  We decide that in the particular circumstances of this case, the commission was permitted to take the criminal proceeding against McDowell and its disposition into account,

---

[3] A provisional employee is an employee in a civil service position who does not hold the position on a permanent basis, i.e., without any restrictions on duration of the employment. See G. L. c. 31, § 1 (§ 1) (defining "[p]rovisional employee" and "[p]ermanent employee").  A civil service employee may receive a provisional promotion pursuant to c. 31, § 15.  Like a provisional employee, a provisionally promoted employee is not appointed on a permanent basis, and does not have tenure in the provisional promotion.  See G. L. c. 31, § 1 (defining "[t]enured employee").

but that McDowell's indictment for filing false tax returns did not qualify as an indictment "for misconduct in [McDowell's] . . . employment" within the meaning of G. L. c. 268A, § 25, and thus a suspension based on the indictment would not have been valid.

1. Background. McDowell began working as a skilled laborer for the city in 1987. In 1989, he was promoted to the position of carpenter within the city's civil service system. After completing his probationary period, McDowell became a tenured employee in this position on a permanent basis, and served as such until 1993. That year, McDowell was provisionally promoted to the position of assistant deputy of maintenance, and the next year, 1994, he was again provisionally promoted to become the deputy director of maintenance (deputy director) within the then-named facilities management department of the city. The position of deputy director included responsibility for assigning work to approximately forty tradesmen and skilled laborers, interacting with private vendors, and responding to emergencies.

On January 25, 2005, the city sent McDowell a notice of suspension, informing him that he was being suspended without pay from his duties as deputy director for five days, for inappropriate personal use of city property and for conducting

private business during working hours.[4]  The city held a two-day disciplinary hearing and on April 15, 2005, issued a letter to McDowell notifying him that his employment with the city had been terminated.  On April 22, McDowell filed an appeal with the commission.  The commission referred the case to the division of administrative law appeals (DALA), and a DALA magistrate conducted a full evidentiary hearing on December 18, 2006.  At the hearing, the city made an oral motion to dismiss McDowell's appeal, arguing that because McDowell was appointed provisionally to his position as deputy director, the commission did not have jurisdiction to hear the appeal.  The magistrate ultimately agreed and on August 17, 2007, recommended to the commission that McDowell's appeal be dismissed for lack of jurisdiction.  Almost two and one-half years later, on February 12, 2010, the commission issued an interim decision rejecting the magistrate's recommendation to dismiss the appeal and concluding that an employee who held a tenured civil service position and who, while in such tenured position, is provisionally promoted to a different position from which he is later terminated, has the right to appeal to the commission to challenge the just cause for his termination under G. L. c. 31,

---

[4] Since 1994, McDowell was the sole proprietor of a company named McDowell and Sons, and in that capacity worked as a contractor, designing and installing kitchens.

§ 41.[5]  On May 6, 2010, the commission issued a final decision on McDowell's appeal and concluded that although the city was justified in disciplining McDowell on account of the use of city property in connection with his private business, there was not just cause to terminate his employment.  The commission modified the termination, reducing it to a nineteen-month suspension to run from April 15, 2005, to November 15, 2006;[6] thereafter, McDowell was to be deemed reinstated to his permanent civil service position of carpenter.

On April 13, 2007, while McDowell's appeal from his termination was pending before the commission but before it had been decided, McDowell was indicted for violation of 26 U.S.C. § 7206(1) (2006) (filing false return under oath),[7] and

---

[5] In the same decision, the Civil Service Commission (commission) also determined that the one-year contract between McDowell and the city of Springfield (city), dated July 1, 2001, in which McDowell purported to agree that the provisional position he held was not subject to the civil service law or any collective bargaining agreement, was unenforceable because against public policy.  The city wisely does not challenge this determination on appeal, and we do not discuss it further.

[6] The commission's final decision contained a typographical or scrivener's error with respect to the end date of McDowell's suspension, which the commission subsequently corrected.  There is no disagreement that the end date was to be November 15, 2006.

[7] The city and the commission refer to the statute under which McDowell was indicted as 26 U.S.C. § 2706(1).  There is no statute designated as 26 U.S.C. § 2706.  We assume the reference is intended to refer to 26 U.S.C. § 7206(1).

subsequently pleaded guilty on November 27, 2007.[8]  Eight days after the issuance of the commission's final decision of May 6, 2010, the city filed a motion for reconsideration, requesting the commission to consider McDowell's indictment and conviction.[9] The city argued that if McDowell had still been working for the city at the time of his April, 2007, indictment -- which he would have been pursuant to the commission's subsequent decision imposing a nineteen-month suspension that would have ended November 15, 2006 -- the city would have suspended McDowell pursuant to G. L. c. 268A, § 25, upon his indictment, and would have terminated him under G. L. c. 31, § 50, upon his conviction.[10]  McDowell opposed the motion.  On March 24, 2011, the commission allowed the city's motion in part, concluding that the city would have suspended McDowell without pay on April 13, 2007; would have terminated him effective November 27, 2007; and would have had just cause to take both actions.  The commission also modified its original determination that a nineteen-month suspension was to be imposed, ruling that the

---

[8] The indictment charged McDowell with filing false income tax returns for the years 2001 through 2005.

[9] The city apparently raised the issue of including evidence of McDowell's indictment for and subsequent conviction of tax fraud at a prehearing conference in the case, but was instructed not to raise this issue before the commission issued its final decision, but, if necessary, to raise it through a motion for reconsideration.

[10] We discuss both of the cited statutes, infra.

suspension should have been for six months. As a consequence of this modification, the commission's decision created a reinstatement period for McDowell between October 16, 2005, and April 13, 2007.

Both the city and McDowell sought judicial review of the commission's decision pursuant to G. L. c. 30A, § 14. In May, 2012, a judge in the Superior Court denied both parties' motions for judgment on the pleadings and affirmed the decision of the commission. The judge ruled that (1) the commission had reasonably interpreted G. L. c. 31, § 41, to permit an employee such as McDowell, who held a tenured civil service position but then accepted a provisional promotion, to appeal his termination to the commission; and (2) the city was entitled to suspend McDowell under G. L. c. 268A, § 25, upon his indictment on April 13, 2007, and thereafter entitled to discharge him pursuant to G. L. c. 31, § 50, upon his conviction on November 27, 2007. McDowell and the city both appealed the judge's decision to the Appeals Court, and we transferred the case to this court on our own motion.

2. Discussion. The city's appeal raises a single issue, the correctness of the commission's, and the judge's, determination that although McDowell was terminated from his employment in a position to which he was appointed only provisionally and in which he was not tenured, nonetheless he

was entitled to appeal his termination to the commission. McDowell agrees with the commission on this issue and raises separate issues in his appeal: (1) the commission should not have considered his 2007 indictment and conviction at all in connection with his appeal from the city's 2005 termination decision because these events occurred long after the city terminated him; (2) in any event, the commission erred in concluding the city permissibly could suspend him pursuant to G. L. c. 268A, § 25, on account of his indictment; and (3) his termination based on his conviction was improper and should be deemed void because the city, in violation of his statutory due process rights set out in G. L. c. 31, § 41, never gave him proper notice of this alleged basis for termination, or an opportunity for a hearing on it. We consider the city's and McDowell's claims separately, and in turn.

a. Effect of a provisional promotion on a tenured civil service employee's right to appeal to the commission. The city contends that McDowell was not entitled to appeal the termination of his employment as deputy director to the commission under G. L. c. 31, §§ 41-45. We disagree.

Pursuant to G. L. c. 31, §§ 41 (§ 41) and 43 (§ 43),[11] a civil service "tenured employee" may be terminated only for just

_____

[11] General Laws c. 31, § 41 (§ 41), provides in pertinent part:

"Except for just cause and except in accordance with the provisions of this paragraph, a tenured employee shall not be discharged, removed, [or] suspended for a period of more than five days . . . . Before such action is taken, such employee shall be given a written notice by the appointing authority, which shall include the action contemplated, the specific reason or reasons for such action and a copy of [G. L. c. 31, §§ 41-45], and shall be given a full hearing concerning such reason or reasons before the appointing authority or a hearing officer designated by the appointing authority. . . .

". . .

"If it is the decision of the appointing authority, after hearing, that there was just cause for an action taken against a person pursuant to the first . . . paragraph[] of this section, such person may appeal to the commission as provided in [G. L. c. 31, § 43]."

General Laws c. 31, § 43 (§ 43), in turn, provides in relevant part:

"If a person aggrieved by a decision of an appointing authority made pursuant to [§ 41] shall, within ten days after receiving written notice of such decision, appeal in writing to the commission, he shall be given a hearing before a member of the commission or some disinterested person designated by the chairman of the commission. . . .

"If the commission by a preponderance of the evidence determines that there was just cause for an action taken against such person it shall affirm the action of the appointing authority, otherwise it shall reverse such action and the person concerned shall be returned to his position without loss of compensation or other rights; provided, however, if the employee, by a preponderance of the evidence, establishes that said action was based upon harmful error in the application of the appointing authority's procedure, an error of law, or upon any factor or conduct on the part of the employee not reasonably related to the fitness of the employee to perform in his position, said action shall not be sustained and the person shall be returned to his position without loss of

cause and in accordance with certain procedural protections including written notice, a hearing, and an opportunity to appeal to the commission.  A "tenured employee" is defined as one "who is employed following (1) an original appointment to a position on a permanent basis and the actual performance of the duties of such position for the probationary period required by law or (2), a promotional appointment on a permanent basis." G. L. c. 31, § 1 (§ 1).

The city reads this definition as indicating that McDowell, who had been promoted provisionally to the position of deputy director, held a "promotional appointment" but not on a permanent basis, and therefore was not a "tenured employee" at the time the city terminated him.  Therefore, it argues, the protections that §§ 41 and 43 afford tenured employees, including the right to appeal to the commission, were not available to McDowell.  The commission advances a different interpretation, contending that the definition of "tenured employee" in § 1 describes two separate and independent categories of tenured civil service employees, and if a person (such as McDowell) meets the qualifications of the first category -- i.e., he receives "an original appointment to a [civil service] position on a permanent basis" and completes the

compensation or other rights.  The commission may also modify any penalty imposed by the appointing authority."

probationary period -- nothing in the language or structure of § 1 suggests that he loses the "tenured employee" status if he is later provisionally promoted.  Rather, the commission states, as a "tenured employee," such a person is entitled to the procedural protections of §§ 41 and 43, including the right to appeal an appointing authority's termination decision to the commission.  In the commission's view, interpreting the statute in this manner is necessary to protect the loss of an employee's tenured status through no fault of his own.

Great weight is given to a "reasonable construction of a regulatory statute adopted by the agency charged with . . . [its] enforcement."  School Comm. of Springfield v. Board of Educ., 362 Mass. 417, 441 n.22 (1972), quoting Investment Co. Inst. v. Camp, 401 U.S. 617, 626-627 (1970).  A reviewing court "must apply all rational presumptions in favor of validity of the administrative action and not declare it void unless its provisions cannot by any reasonable construction be interpreted in harmony with the legislative mandate."  Middleborough v. Housing Appeals Comm., 449 Mass. 514, 524 (2007), quoting Zoning Bd. of Appeals of Wellesley v. Housing Appeals Comm., 385 Mass. 651, 654 (1982).  However, an administrative interpretation will not be followed if it is contrary to the "plain and unambiguous terms . . . [in] a statute."  School Comm. of Springfield, supra, quoting Bolster v. Commissioner of Corps. & Taxation, 319

Mass. 81, 86 (1946). The burden of proving the invalidity of an administrative action rests with the party challenging that action. Middleborough, supra.

As the commission argues, its interpretation is consistent with the language used by the Legislature in the statutory provisions at issue: an individual who holds a tenured, permanent civil service position and is then provisionally promoted is still "a civil service employee who is employed following (1) an original appointment to a position on a permanent basis." G. L. c. 31, § 1. See Andrews v. Civil Serv. Comm'n, 446 Mass. 611, 613 (2006) ("A tenured employee in the civil service system is one who initially occupied a position by original appointment . . . and has completed the probationary period, or one who has received a 'promotional appointment' on a permanent basis . . ."). Moreover, and importantly, the commission's construction of §§ 1 and 41 to permit a discharged provisional employee who previously held tenured employee status to appeal his discharge to the commission is reasonably related to and furthers the purpose of the civil service law, which is "to free public servants from political pressure and arbitrary separation from the public service" while providing for removal

13

of those that are incompetent or unworthy.  See Cullen v. Mayor

of Newton, 308 Mass. 578, 581 (1941).[12]

Because the commission's reading of the relevant statutory

provisions is "reasonable, consistent with the statutory

language and purposes, and appropriate," Zoning Bd. of Appeals

of Amesbury v. Housing Appeals Comm., 457 Mass. 748, 762 (2010),

we accept it.  Accordingly, McDowell, as a provisionally

promoted civil service employee who previously held tenure in

his original, appointed position of carpenter, was a "tenured

employee" who retained the right to appeal from the termination

of his employment with the city to the commission.[13]

---

[12] The commission stated that due to a lack of civil service
examination administration, there was an over-use of provisional
appointments and promotions, and that in these circumstances,
providing the protections of §§ 41 and 43 to a provisionally
promoted employee who initially held a tenured civil service
position on a permanent basis would best promote the legislative
intent of the civil service laws.  We note that McDowell held
his provisional appointment as deputy director for over ten
years.

[13] The city suggests that this interpretation of §§ 1 and 41
of the civil service statute will require appointing authorities
always to permit provisionally promoted employees who are
terminated from employment "through their own fault" to return
to and remain in their original, tenured civil service
positions.  The city is not correct.  Although such a civil
service employee has the right to appeal his or her termination
to the commission, if the commission finds just cause for the
appointing authority's decision to terminate, the commission
must affirm that decision.  See G. L. c. 31, § 43.  In such a
case, the employee must leave his or her municipal employment
altogether and has no right to return to the original, tenured
position.  A return to the original position may only occur if,
pursuant to its authority under § 43, the commission reverses

We turn to McDowell's appeal.

b. Suspension for "misconduct in office".[14]  The commission

determined that the city, pursuant to G. L. c. 268A, § 25

(§ 25), would have suspended McDowell without pay effective

April 13, 2007, on account of his indictment for filing false

tax returns.  The city agrees with the commission's decision in

this respect, but McDowell argues that the commission committed

---

the appointing authority's penalty of termination or, as in this
case, modifies it.

[14] As previously indicated, the first issue McDowell raises
in his appeal is that it was error for the commission to have
considered his 2007 indictment and conviction at all in this
case, because they took place two years after the city
terminated him, and as such, they cannot qualify as "after-
acquired evidence" as the city suggested to the commission.  The
after-acquired evidence principle permits an employer to show
that later-discovered but legitimate reasons for taking adverse
employment action against an employee, if they had been known at
the time, would have justified or mitigated the employer's
otherwise impermissibly discriminatory action (e.g., discharge)
relating to that employee, and can serve to limit the employee's
recovery.  See, e.g., Flesner v. Technical Communications Corp.,
410 Mass. 805, 815-816 (1991).  We agree with McDowell that his
criminal indictment and conviction are not "after-acquired
evidence" because they did not occur before the city terminated
McDowell in 2005.  Nevertheless, the fact that the criminal
charges do not so qualify is of no import in this case because,
as the judge concluded, at issue here are two separate
terminations by the city:  (1) the April 15, 2005, termination
for misuse of city property; and (2) the November 27, 2007,
termination based on McDowell's criminal conviction.  The city
asked the commission to consider McDowell's indictment for and
conviction of filing false tax returns as a basis for the second
termination only, and accordingly, the after-acquired evidence
principle does not come into play.  We consider the issue of two
terminations, infra.

error of law in ruling that § 25 authorized the city to suspend him upon his indictment.  We agree with McDowell.

A public employer may suspend an employee without pay pursuant to § 25 during any period the employee is under indictment for "misconduct in such office or employment."[15]  The applicability of § 25 in each case is "controlled by the duties and obligations accompanying the particular employment," Perryman v. School Comm. of Boston, 17 Mass. App. Ct. 346, 349 (1983), and there must be a direct relationship between the employee's misconduct and the office held.  Id. at 348.  In general, a criminal indictment arising out of an employee's off-duty activities is not considered to be one implicating misconduct in office.  Dupree v. School Comm. of Boston, 15 Mass. App. Ct. 535, 537 (1983).  "There are, however, circumstances where the crime charged, no matter where or when performed, is so inimical to the duties inherent in the employment that an indictment for that crime is for misconduct

---

[15] General Law c. 268A, § 25 (§ 25), provides in pertinent part:

> "An officer or employee of a county, city, town or district . . . may, during any period such officer or employee is under indictment for misconduct in such office or employment . . . be suspended by the appointing authority . . . .
>
> "Any person so suspended shall not receive any compensation or salary during the period of suspension . . . ."

in office." Id. In addition, "[t]here are certain forms of employment which carry a position of trust so peculiar to the office and so beyond that imposed by all public service that conduct consistent with this special trust is an obligation of the employment." Perryman, supra at 349. Police officers fall into such a category; in order to perform their jobs, they "voluntarily undertake to adhere to a higher standard of conduct than that imposed on ordinary citizens," must "comport themselves in accordance with the laws that they are sworn to enforce and behave in a manner that brings honor and respect for rather than public distrust of law enforcement personnel." Attorney Gen. v. McHatton, 428 Mass. 790, 793-794 (1999), quoting Police Comm'r of Boston v. Civil Service Comm'n, 22 Mass. App. Ct. 364, 371 (1986). See Dupree, supra at 538, and cases cited. School teachers do as well, because they have an "extensive and peculiar opportunity to impress [their] attitude and views" on their students. Dupree, supra, quoting Faxon v. School Comm. of Boston, 331 Mass. 531, 534 (1954).

The commission argues that McDowell's indictment for filing false tax returns constitutes misconduct in office because the income from his privately owned business that he failed to report was, in part, earned while he was working for the city

and using public resources.[16]  The commission asserts that
because its determination that McDowell's charged tax fraud
constituted misconduct in office was reasonable and supported by
substantial evidence, that determination is entitled to
deference.

As earlier discussed in another context, deference is due
when an agency interprets a statute it is charged with
administering.  Commerce Ins. Co. v. Commissioner of Ins., 447
Mass. 478, 481 (2006).  The commission, however, is not
specifically charged with administering § 25, which is a statute
that applies generally to all officers, employees, and
appointing authorities of county and local government.
Accordingly, the commission's interpretation of this statute,
while relevant, is not one to which we pay special deference.
Furthermore, ultimately, "the duty of statutory interpretation
rests in the courts."  Commerce Ins. Co., supra.  There is
little or no evidence in the record before us linking the false
tax returns at issue in McDowell's indictment -- which covered
five separate years -- to the private business work the

---

[16] The commission's decision on the city's motion for
reconsideration summarizes the commission's conclusions that
McDowell engaged in the following conduct:  (1) used his city-
owned cellular telephone on eleven occasions for a total of
fourteen minutes during regular work hours for his private
business; (2) used a city-owned facsimile machine at least twice
for private business; (3) asked a city employee for advice about
his private business during work hours; and (4) compiled or
reviewed private business proposals during work hours.

commission found McDowell undertook during the hours of his employment.  As a consequence, the record did not provide a basis for the commission reasonably to have concluded that McDowell's indicted conduct represented misconduct in office within the meaning of § 25, rather than conduct qualifying as off-duty.

The city takes a different tack, arguing that the position of deputy director, like that of a police officer or teacher, holds a higher expectation of trust than other public service jobs, and therefore McDowell's off-duty conduct cannot be separated from his on-duty conduct.  McDowell counters that at the time of his indictment in April of 2007, he would no longer have been a deputy director.  Rather, pursuant to the terms of the commission's original decision in this case, he would have returned to his original, tenured civil service position of carpenter following the suspension ordered by the commission. He argues that a carpenter is an ordinary employee "not subject to any special trust inherent in that position."  Accordingly, his filing of false tax returns, a crime arising from off-duty conduct (at least based on the record here), was not "misconduct in office" within the meaning of § 25, and therefore the city could not have properly suspended him pursuant to that statute.

Had the commission issued in a more timely manner its decision to modify McDowell's termination to a nineteen-month

suspension, it is reasonable to assume, as McDowell does, that at the time he was indicted in April, 2007, he already would have completed his suspension and been employed as a carpenter for the city.[17]  In these circumstances, the city's contention that McDowell's role as deputy director was one of public trust becomes essentially irrelevant.  The appropriate focus must be on the relationship between the crime charged in the indictment and McDowell's "duties and obligations" as a carpenter. Perryman, 17 Mass. App. Ct. at 349.

The record is silent on the specific duties of a skilled carpenter in the employ of the city, but certainly the position is not on a par with that of a police officer or school teacher in terms of public trust.  There is no suggestion that a carpenter, even one who is a public employee, is sworn to uphold the law as an integral part of his job, nor any contention that a carpenter has any particular opportunity to act as a role model for or impress his attitudes on young students.  Rather,

---

[17] While the record does not specify the cause of the delay, the commission does acknowledge that "this appeal was longer than usual" and "it is regrettable that a decision was not issued in a more timely manner."  McDowell's nineteen-month suspension would have run from April 15, 2005, to November 15, 2006, at which point presumably he would have returned to his position as a carpenter for the city and would have been serving in that position in April, 2007, when he was indicted for filing false returns.  (Even with the commission's later modification of the nineteen-month suspension to a six-month suspension, the result would have been the same:  McDowell would have been employed as a carpenter when he was indicted.)

this appears to be a case to which the rule that "[a]n indictment for a crime arising from an employee's off-duty conduct is not generally considered misconduct in office under G. L. c. 268A, § 25," squarely applies. Dupree, 15 Mass. App. Ct. at 537. The city would not have been entitled to suspend McDowell without pay from his employment as a skilled carpenter as of April 13, 2007, pursuant to § 25, and the commission's contrary ruling was error.

c. Waiver of right to second termination hearing.[18] Finally, McDowell argues that even if the commission permissibly could consider his conviction as a separate ground for his termination, McDowell was deprived of his due process rights because the city did not comply with the necessary procedural requirements pursuant to § 41 when, through its motion for

---

[18] We have discussed in the previous section McDowell's challenge to the substantive legal authority of the city to suspend him based on the indictment for filing false tax returns that was issued on April 13, 2007. McDowell does not challenge on appeal the substantive legal authority of the city to terminate his employment based on his conviction of this crime, which occurred on November 27, 2007. Rather, his challenge to his termination from employment based on the conviction, which we discuss in this section, is a procedural one. As to substantive authority, the city has stated that it was permitted to terminate McDowell upon his conviction pursuant to G. L. c. 31, § 50, which provides in pertinent part, "No person . . . shall . . . be appointed to or employed in any . . . [civil service] position within one year after his conviction of any crime except that the appointing authority may, in its discretion, appoint or employ within such one-year period a person convicted of [certain specified crimes not applicable in this case] . . . ."

reconsideration, it sought respectively to suspend and then terminate McDowell based on his indictment and subsequent conviction.[19] Section 41 requires, in part, that prior to suspending for more than five days or terminating a tenured employee, the appointing authority provide the employee with proper written notice. McDowell contends that he never received such notice as to the city's intent to suspend and subsequently terminate his employment based on the indictment and conviction, and thus, he was not able to avail himself of his statutory due process rights to a hearing. Accordingly, the commission's decision approving of his termination on this ground should be rendered void and he should be reinstated as a carpenter and awarded back pay and benefits to October 15, 2005. We conclude that because McDowell failed to raise this issue properly before the commission, or the Superior Court, he has waived any claim to defective notice and therefore the commission's decision that he would have been terminated effective November 27, 2007, did not violate the procedural rights and protections that § 41 afforded him.

Failure to raise an issue before an appointing authority, an administrative agency, and a reviewing court precludes a party from raising it on appeal. See Albert v. Municipal Court

_____

[19] This is the second termination decision referred to previously. See note 14, supra.

of Boston, 388 Mass. 491, 493-494 (1983).  While there may be exceptional circumstances requiring appellate review of an issue not raised before the agency or the court below so as to avoid injustice, the presumption of waiver "has particular force where the other party may be prejudiced by the failure to raise the point below."  Id. at 494, quoting Royal Indem. Co. v. Blakely, 372 Mass. 86, 88 (1977).  McDowell did not raise the claim of defective notice before the commission, did not appeal the commission's decision to the Superior Court, and did not raise the issue before the judge in that court when responding to the city's appeal -- despite his knowledge that the city did in fact seek to suspend and terminate him as a result of his criminal conduct.  Accordingly, the issue is waived.[20]

---

[20] The city and the commission argue that McDowell did receive written notice in the form of the city's motion for reconsideration.  In the motion, the city stated that "upon indictment Mr. McDowell would have been suspended under [G. L. c. 268A] and upon conviction terminated."  This language placed McDowell on notice that, even if the commission's decision modifying his April 15, 2005, termination to a suspension was upheld, McDowell's employment with the city would have ceased upon his indictment and conviction in 2007.  It is reasonable to assume that McDowell understood the city's intent to terminate him, as evidenced by his opposition to the city's motion for reconsideration that discussed at length why his criminal activity should not be considered.  After receiving what McDowell alleges was defective notice, he could have filed a complaint, pursuant to G. L. c. 31, § 42, within ten days in order to provide the city the opportunity to correct it, but he did not.  McDowell also could have exercised his right to a hearing as provided in the commission's decision, but he declined.  Once the commission issued its decision on the city's

3. <u>Conclusion</u>.  The judgment of the Superior Court affirming the decision of the commission is affirmed in part and reversed in part.  For reasons explained in this opinion, the city did not have the authority to suspend McDowell without pay upon his indictment for filing false tax returns, and therefore the decision of the commission ruling that McDowell would have been suspended as of April 13, 2007, must be reversed in that respect.  McDowell does not challenge the city's substantive legal authority to terminate him upon his conviction of the charged crime on November 27, 2007, and the commission's decision affirming McDowell's termination as of that date should be affirmed.  McDowell was not properly suspended during the period from October 15, 2005, the date on which the six-month suspension ordered by the commission would have been completed, to November 27, 2007, the date of McDowell's conviction.  The case is remanded to the Superior Court for entry of an order remanding the case to the commission for further proceedings consistent with this opinion.

<u>So ordered</u>.

---

motion for reconsideration, McDowell could have filed an appeal with the commission contesting the termination, but he did not.