NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12142


MOUNT VERNON FIRE INSURANCE COMPANY  vs.  VISIONAID, INC.[1]



Suffolk.     December 5, 2016. - June 22, 2017.

Present:  Gants, C.J., Lenk, Hines, Gaziano, Lowy, Budd, &
Cypher, JJ.



Insurance, Insurer's obligation to defend.



Certification of questions of law to the Supreme Judicial
Court by the United States Court of Appeals for the First
Circuit.


Kenneth R. Berman (Heather B. Repicky also present) for the
defendant.
James J. Duane, III (Scarlett M. Rajbanshi also present)
for the plaintiff.
The following submitted briefs for amici curiae:
Marshall Gilinsky for United Policyholders.
Laura Foggan, of the District of Columbia, & Rosanna
Sattler for American Insurance Association & others.
Michael F. Aylward for American International Group, Inc.,
& another.


GAZIANO, J.  In this case we are called upon to answer

three certified questions from the United States Court of

---

[1] Formerly known as H.L. Bouton Co., Inc.

Appeals for the First Circuit involving the scope of an insurer's duty to defend, and whether that duty extends to a counterclaim brought by the insured. For the reasons that follow, we conclude that where an insurance policy provides that the insurer has the "duty to defend any claim" initiated against the insured, the insurer's duty to defend does not require it to prosecute affirmative counterclaims on behalf of its insured.[2]

1. Facts and prior proceedings. We recite the facts based on the United States District Court judge's memorandum of decision, the decision by the United States Court of Appeals for the First Circuit, and the undisputed documents in the record. Visionaid, Inc. (Visionaid),[3] is a manufacturer of lens cleaning and eye safety products. It purchased an employment practices liability insurance policy from Mount Vernon Fire Insurance Company (Mount Vernon), which covered, among other things, wrongful termination claims brought against Visionaid from May, 2011, through May, 2012.

As relevant here, the policy imposed two duties on Mount Vernon with respect to any wrongful termination claim brought

---

[2] We acknowledge the amicus briefs submitted by United Policyholders; American Insurance Association, Complex Insurance Claims Litigation Association, and Property Casualty Insurers Association of America; and American International Group, Inc., and Massachusetts Insurance Federation, Inc.

[3] When it obtained the insurance policy at issue, Visionaid was known as H.L. Bouton, Co., Inc. The company changed its name shortly after the policy was issued.

against Visionaid.  The policy provided that Mount Vernon had "the right and duty to defend any Claim to which this insurance applies," and that it was obligated to "pay one hundred percent (100%) of the Defense Costs for the [covered] Claim" up to the policy limit.  Under the terms of the policy, "Claim" was defined as "any proceeding initiated against [Visionaid] . . . seeking to hold [Visionaid] responsible for a Wrongful Act." "Defense costs" was defined as "reasonable and necessary legal fees and expenses incurred by [Mount Vernon], or by any attorney designated by [Mount Vernon] to defend [Visionaid], resulting from the investigation, adjustment, defense, and appeal of a Claim."[4]

---

[4] The policy also provided:

"Notice:  This is a Claims Made Policy.  This Policy covers only those Claims first made against the Insured during the Policy Period or Extended Reporting Period, if purchased. Defense Costs shall be applied against the Retention.

". . .

"I.  Insuring Agreement

"A.  The Company will pay on behalf of the Insured, Loss in excess of the Retention not exceeding the Limit of Liability shown on the policy Declarations for which this coverage applies that the Insured shall become legally obligated to pay because of Claims first made against the Insured during the Policy Period or during any Extended reporting Period, if applicable, for Wrongful Acts arising solely out of an Insured's duties on behalf of the Organization.

"B.  The Company has the right and duty to defend any Claim

In September, 2011, Visionaid discovered through a forensic audit that one of its employees, Gary Sullivan, appeared to have misappropriated several hundred thousand dollars of company funds. In October, 2011, Visionaid terminated Sullivan. In August, 2012, Sullivan commenced an action for wrongful termination before the Massachusetts Commission Against Discrimination (MCAD), asserting that Visionaid had terminated him due to his age. Pursuant to the insurance policy, Mount Vernon appointed panel attorney Todd Bennett to defend Visionaid.[5] Bennett filed an answer stating that Visionaid had

---

to which this insurance applies, even if the allegations of the Claim are groundless, false or fraudulent.

". . .

"VIII. Defense and Settlement.

". . .

"B. . . . [I]f a Claim is made against an Insured for Loss that is both covered and uncovered by this Policy, the Company will pay one hundred percent (100%) of the Defense Costs for the Claim, until such time that the Limits of Liability of this policy are exhausted by payment of a covered Loss or the Claim for the covered Loss is resolved by settlement, verdict or summary judgment."

[5] Law firms that agree to become "panel counsel" "sign a standard retainer agreement" with an insurer. The agreement limits the amount of fees and expenses that panel counsel may incur over a given period of time, requires preapproval from the insurer for any fees in excess of a specified amount, and restricts the number of partners, associates, and paralegals who may work on a given case. Bennett was appointed as panel counsel in December, 2011, when Visionaid first informed Mount Vernon that Sullivan was asserting an age discrimination claim.

had three nondiscriminatory reasons for terminating Sullivan's employment: his poor job performance, insubordination, and suspected misappropriation of company funds.

Bennett then attempted to reach a settlement with Sullivan. Initially, Sullivan demanded $400,000, but eventually agreed to dismiss his complaint if Visionaid signed a mutual release agreement that it would not pursue him for the misappropriated funds. Visionaid would not agree to the mutual release, as it intended to bring a claim against Sullivan for the misappropriation.

In February, 2013, Sullivan filed a complaint in the Superior Court, and the MCAD action was dismissed. He asserted claims of age discrimination; unlawful termination, in violation of the covenant of good faith and fair dealing; breach of contract; and promissory estoppel. Mount Vernon again appointed Bennett to defend Visionaid, this time under a "reservation of rights," in which Mount Vernon disputed whether Visionaid's insurance policy obligated Mount Vernon to defend against the wrongful termination claim.[6] Bennett filed an answer again

---

[6] A "reservation of rights" allows an insurer to defend an insured while disputing whether the policy requires the insurer to defend the underlying claim. Sarnafil, Inc. v. Peerless Ins. Co., 418 Mass. 295, 309 (1994) (O'Connor, J., dissenting in part). If an insurer defends under a reservation of rights, the insured may elect to proceed with its own defense counsel, at the insurer's expense. Herbert A. Sullivan, Inc. v. Utica Mut.

asserting that Sullivan had been terminated as a result of poor job performance, insubordination, and misappropriation of Visionaid's funds.  Bennett did not file a counterclaim for misappropriation.

Visionaid informed Mount Vernon that if Bennett did not prosecute the counterclaim, it would exercise its rights pursuant to the reservation of rights, and select independent counsel for its representation, at Mount Vernon's expense. Mount Vernon then withdrew its reservation of rights, but continued to maintain that the policy did not require it to prosecute the counterclaim for misappropriation of funds, arguing that the duty to defend did not include the duty to prosecute an affirmative counterclaim.

Mount Vernon filed a complaint for declaratory judgment in the United States District Court for the District of Massachusetts, seeking a ruling that its duty to Visionaid did not require that it prosecute or pay for the prosecution of the counterclaim for misappropriation of funds.  Visionaid filed a counterclaim seeking a judgment declaring that Mount Vernon's duty to defend included an obligation to prosecute Visionaid's counterclaim for misappropriation of funds, and that Mount Vernon was required to appoint Visionaid independent counsel because Mount Vernon's position that it was not obligated to

Ins. Co., 439 Mass. 387, 406-407 (2003).

prosecute the counterclaim had created a conflict of interest with Visionaid.

A United States District Court judge issued a judgment declaring that Mount Vernon's duty to defend Visionaid did not require it to prosecute the counterclaim for misappropriation of funds, and that the absence of such a duty did not create a conflict of interest with Visionaid, so that Mount Vernon was not required to pay the costs of independent counsel.

Visionaid appealed to the United States Court of Appeals for the First Circuit. That court concluded that the appeal raised an issue of State law that had yet to be addressed by this court, and certified three questions to us.

2. Discussion. The United States Court of Appeals for the First Circuit certified the following questions:

> 1. "Whether, and under what circumstances, an insurer (through its appointed panel counsel) may owe a duty to its insured -- whether under the insurance contract or the Massachusetts 'in for one, in for all' rule -- to prosecute the insured's counterclaim(s) for damages, where the insurance contract provides that the insurer has a 'duty to defend any Claim,' i.e., 'any proceeding initiated against [the insured]'?"

> 2. "Whether, and under what circumstances, an insurer (through its appointed panel counsel) may owe a duty to its insured to fund the prosecution of the insured's counterclaim(s) for damages, where the insurance contract requires the insurer to cover 'Defense Costs,' or the 'reasonable and necessary legal fees and expenses incurred by [the insurer], or by any attorney designated by [the insurer] to defend [the insured], resulting from the investigation, adjustment, defense, and appeal of a Claim'?"

3. "Assuming the existence of a duty to prosecute the insured's counterclaim(s), in the event that it is determined that an insurer has an interest in devaluing or otherwise impairing such counterclaim(s), does a conflict of interest arise that entitles the insured to control and/or appoint independent counsel to control the entire proceeding, including both the defense of any covered claims and the prosecution of the subject counterclaim(s)?"

We conclude that (1) an insurer with a contractual duty to defend an insured is not required to prosecute an affirmative counterclaim on the insured's behalf, pursuant either to the contractual language in the policy at issue or the common-law "in for one, in for all" doctrine; (2) the duty to pay defense costs has the same scope as the duty to defend, and thus does not require an insurer to pay the costs of prosecuting a counterclaim on behalf of the insured; and (3) because of our answers to the first two questions, we do not reach the third question.

a. Insurer's duty to defend. i. Contractual duty. We turn first to the insurer's contractual duties arising from the insurance policy. As with any contract, in interpreting an insurance policy, we begin with the plain language of the policy. Boston Gas Co. v. Century Indem. Co., 454 Mass. 337, 355 (2009). "We interpret the words of the standard policy in light of their plain meaning, . . . giving full effect to the document as a whole[,] . . . consider[ing] 'what an objectively reasonable insured, reading the relevant policy language, would

expect to be covered' . . . [and] interpret[ing] the provision of the standard policy in a manner consistent with the statutory and regulatory scheme that governs such policies" (citation omitted).  Golchin v. Liberty Mut. Ins. Co., 466 Mass. 156, 159-160 (2013).

Visionaid's employment practices liability insurance policy obligates Mount Vernon to "defend" Visionaid against any "Claim" i.e., "any proceeding initiated against [Visionaid] . . . seeking to hold [Visionaid] responsible for a Wrongful Act." While the meaning of "Claim" thus is defined in the policy, the policy is silent on the definition of the term "defend." Therefore, we construe the word "defend" using its "usual and accepted meaning."  See Federal Nat'l Mtge. Ass'n v. Rego, 474 Mass. 329, 334 (2016), citing Seideman v. Newton, 452 Mass. 472, 477-478 (2008).  In common usage, to "defend" means to "deny or oppose the right of a plaintiff in . . . a suit or wrong charged."  Webster's Third New International Dictionary 591 (1993).  "Defense," in ordinary usage, is defined as "a defendant's denial, answer, or plea . . . an opposing or denial of the truth or validity of the plaintiff's . . . case."[7]  Id.

_____

[7] "Prosecute," on the other hand, is defined as "to institute legal proceedings against; [especially] to accuse of some crime or breach of law or to pursue for redress or punishment of a crime or violation of law in due legal form before a legal tribunal."  Webster's Third New International Dictionary 1820 (1993).

As the plain meaning of the word "defend" is clear, we do not deviate from it. See Certain Interested Underwriters at Lloyd's, London v. Stolberg, 680 F.3d 61, 66 (1st Cir. 2012) ("ambiguity -- unlike beauty -- does not lie wholly in the eye of the beholder. . . . A policy provision will not be deemed ambiguous simply because the parties quibble over its meaning").

Accordingly, in the language of Visionaid's contract, the essence of what it means to defend is to work to defeat a claim that could create liability against the individual being defended. Visionaid and Mount Vernon entered into a contractual agreement that Visionaid would pay a certain amount of money to insure against a particular risk. See Red Head Brass, Inc. v. Buckeye Union Ins. Co., 135 Ohio App. 3d 616, 629 (1999) (insured "bargained only for the insurer to pay for defending the insured against litigation. It did not bargain for legal representation where the insured is the plaintiff"). The agreement in this case, memorialized in the written insurance policy, required Mount Vernon to "defend" Visionaid in any claim "first made against [it] during the Policy Period," and no more. See 1 A.D. Windt, Insurance Claims and Disputes: Representation of Insureds & Insurers § 4:41 (6th ed. 2013) ("An insurer, being obligated only to defend claims brought 'against' the insured, is not required to bear the cost of prosecuting a counterclaim on behalf of the insured").

Visionaid advances a number of policy arguments in support of its position, some of which the dissent urges upon us, that an insurer should be obligated to prosecute an affirmative counterclaim on behalf of its insured.  In light of the plain language of the policy, however, even if we were inclined to do so, we are unable to adopt these suggestions.  Where the language of an insurance policy is clear and unambiguous, we rely on that plain meaning, and do not consider policy arguments in interpreting the plain language.  "[T]he question whether a bargain is smart or foolish, or economically efficient or disastrous, is not ordinarily a legitimate subject of judicial inquiry."  11 R.A. Lord, Williston on Contracts § 31:5, at 455 (4th ed. 2012).  See Towne Realty, Inc. v. Zurich Ins. Co., 193 Wis. 2d 544, 569-570 (Ct. App. 1995) (Cane, P.J., dissenting) (pursuing affirmative counterclaim "might be a good defense strategy . . . but . . . [there is no] obligation beyond the terms of the insurance policy which is to defend against any suits filed against its insured").

We note that courts in a number of other jurisdictions have considered similarly worded insurance policies, and have reached a similar determination that the meaning of the word "defend" is not ambiguous.  Those courts have concluded that the duty to "defend" requires an insurer to work to defeat a claim brought against the insured, but not to prosecute an affirmative claim

against the plaintiff in the underlying suit, no matter how advantageous that claim would be to the insured. See, e.g., Morgan, Lewis & Brockius LLP v. Hanover Ins. Co., 929 F. Supp. 764, 771 (D.N.J. 1996) ("Nowhere in the policy is there any mention that [the insurer] would pay for affirmative prosecution of a civil action by [the insured]. The court finds the policy language to be clear and unambiguous"); Shoshone First Bank v. Pacific Employers Ins. Co., 2 P.3d 510, 516 (Wyo. 2000) ("We accept the general premise that '[a]n insurer, being obligated to defend claims "against" the insured, is not required to bear the cost of prosecuting a counterclaim on behalf of the insured'" ; "if an insurance policy fails to specify coverage for prosecuting counterclaims, the policy language will not be 'tortured' to create an ambiguity"). See Aldous v. Darwin Nat'l Assur. Co., 851 F.3d 473, 483 (5th Cir. 2017) (under Texas law, duty to defend entire lawsuit does not give rise to duty to prosecute helpful or inextricably intertwined claims).

By contrast, courts in some jurisdictions have concluded that the meaning of the word "defend" in an insurance contract was ambiguous, and therefore have interpreted the duty to "defend" in the manner the dissent suggests, to require insurers to prosecute affirmative counterclaims in certain instances. See Great West Cas. Co. v. Marathon Oil Co., 315 F. Supp. 2d 879, 882 (N.D. Ill. 2003) (duty to defend requires insurer to

bring affirmative counterclaims that would reduce insured's liability on underlying claim); Potomac Elec. Power Co. v. California Union Ins. Co., 777 F. Supp. 980, 984 (D.D.C. 1991) (duty to defend requires insurer to bring any claim that reasonable defense attorney would bring); Safeguard Scientifics, Inc. v. Liberty Mut. Ins. Co., 766 F. Supp. 324, 333-334 (E.D. Pa. 1991) (duty to defend requires insurer to bring any counterclaim that is factually "inextricably intertwined" with underlying claim).

Visionaid maintains that the duty to "defend" under its insurance policy may be understood as meaning anything a reasonable defense attorney would do to reduce the liability of the insured.  Visionaid does not contend that this definition of "defend" was intended by the parties but, rather, that it is one possible reasonable interpretation of the contract language.  In support of this argument, Visionaid relies on a canon of contract interpretation for insurance contracts requiring that, where "the language [of an insurance policy] permits more than one rational interpretation," a reviewing court must interpret the contract in the light most favorable to the insured, see Boston Symphony Orch., Inc. v. Commercial Union Ins. Co., 406 Mass. 7, 12 (1989), quoting Palmer v. Pawtucket Mut. Ins. Co., 352 Mass. 304, 306 (1967), and argues that thus we must embrace Visionaid's interpretation of the policy language.

The plain language here, however, does not, by itself, permit the interpretation that Visionaid propounds.  To adopt this interpretation would require us to read in a number of provisions that the parties did not include in the policy and, as the dissent puts it, place an additional duty on the insurer "[w]here the insured's defense is intertwined with a compulsory counterclaim, where any reasonable attorney defending that proceeding would bring such a counterclaim, and where the insured agrees that any damages awarded to the insured on that counterclaim will offset any award of damages against the insured that the insurer is required to indemnify."  Post at    .  Not only is this proposition found nowhere in the language of the contract, it would result in extensive preliminary litigation to determine what claims are sufficiently intertwined, litigation that would be brought by "any reasonable attorney."  This, in turn, would require a fact finder to undertake a cost benefit analysis of, among other things, the additional attorney's fees that would be required to pursue the counterclaim, where the insurer bears the burden of persuasion and the likelihood of recovery from an insured who might be judgment proof.  Parties who wish to require such calculations are of course free to do so in their written contracts. Imposing such requirements where none was included explicitly is far beyond interpreting the language of the contract.

ii. The "in for one, in for all" rule. The "in for one, in for all" rule requires that, where an insurer is obligated to defend an insured on one of the counts alleged against it, the insurer must defend the insured on all counts, including those that are not covered. See GMAC Mtge., LLC v. First Am. Title Ins. Co., 464 Mass. 733, 738 (2013); 3 J.E. Thomas, New Appleman on Insurance Law Library Edition § 17.01[3][a] (2016) ("Virtually all courts agree that if an action involves both potentially covered and noncovered claims -- a so-called 'mixed' action -- the insurer must defend the entire action"). The "central policy behind 'in for one, in for all' . . . [is] that parsing multiple claims is not feasible." GMAC Mtge., LLC, supra at 741. This rule greatly enhances efficiency for litigants, attorneys, and judges, where there are multiple claims and a question whether one or more of the claims is covered by a particular insurance policy. It allows the parties to reach the merits of the underlying action quickly, rather than litigating whether the insurer had a duty to defend and the extent of that duty, prior to placing the matter before the fact finder. Id. See Simplex Techs., Inc. v. Liberty Mut. Ins. Co., 429 Mass. 196, 199 (1999) ("That some, or even many, of the underlying claims may fall outside the coverage does not excuse [the insurer] from its duty to defend these actions"); PTC, Inc. v. Charter Oak Fire Ins. Co., 123 F. Supp. 3d 206, 216 (D. Mass.

2015) ("Under Massachusetts law, if an insurer has a duty to defend any aspect of a litigation, it is 'in for one, in for all,' meaning that it must defend all other claims within the litigation").

Visionaid argues that because the "in for one, in for all" rule expands the duties of an insurer beyond those explicitly set forth in the contract, the policy also expands the insurer's duty to include the obligation to prosecute an affirmative counterclaim. While the "in for one, in for all" rule did expand the class of actions that an insurer is obligated to defend, it did not change the meaning of the word "defend." We are persuaded that the better course under the "in for one, in for all" rule is to require an insurer to defend claims brought against its insured, but not to require an insurer to assert affirmative claims on behalf of that insured. See Duke Univ. v. St. Paul Mercury Ins. Co., 95 N.C. App. 663, 680 (1989) (even in State with "in for one, in for all" rule, insurer's duty to defend did not compel it to bring affirmative counterclaim on behalf of insured).

Expanding the "in for one, in for all" rule in the manner that Visionaid urges misaligns the interests of the party who stands to benefit from the counterclaim (the insured) and the party who bears the cost of prosecuting the counterclaim (the insurer). As a result, allowance of such a rule would increase

the total number of counterclaims brought by insured parties. It also, in effective, would result in additional litigation in virtually every case involving insurance on whether a "reasonable" attorney hired separately by (and paid by) the insured would file the counterclaim in the given circumstances. Such an expansion of the "in for one, in for all" rule also would lead to increased litigation between insurers and insured parties on the question whether a successful counterclaim would result in reduced liability on the underlying claim. See International Ins. Co. v. Rollprint Packaging Prods., Inc., 312 Ill. App. 3d 998, 1015 (2000); Red Head Brass, Inc., 135 Ohio App. 3d at 629. An increase in litigation between insurer and insured is precisely what "in for one, in for all" seeks to avoid. See Shoshone First Bank, 2 P.3d at 517 (allowing insurers to defend only covered claims "would lead to judicial inefficiency and a failure to resolve actions timely and consistently").

We are persuaded by the analysis of a judge of the United States District Court for the District of Massachusetts, describing the particular policy reasons for not including counterclaims among insurers' duties to defend. See Barletta Heavy Div., Inc. vs. Travelers Ins. Co., No. 12-11193-DPW (D. Mass. Oct. 25, 2013). In that case, the Federal District Court judge declined to expand an insurer's duty to defend, noting

that if insurers were obligated to prosecute affirmative counterclaims on behalf of insured parties, "an insured would have every incentive -- and little disincentive -- to file suit, knowing that it could reap the benefits of success -- however unlikely -- while transferring the costs of an otherwise predictably unsuccessful suit onto its insurer." Id. See Reynolds v. Hartford Acc. & Indem. Co., 278 F. Supp. 331, 333 (S.D.N.Y. 1967) (requiring insurer to "prosecut[e] . . . counterclaims would no doubt entail extra expenditures on the part of the insurance carrier . . . [and] would be manifestly unfair"); Towne Realty, Inc., 193 Wis. 2d at 570 (Cane, P.J., dissenting) (duty to defend does not compel insurers "to pursue counterclaims which by their very nature are for the benefit of the person pursuing the counterclaim": the insured).

b. Insurer's obligation to pay for defense costs. The second certified question asks whether an insurer's obligation to pay for an insured's "defense costs" requires the insurer to fund counterclaims on behalf of the insured. The policy at issue here defines "defense costs" as "reasonable and necessary legal fees and expenses incurred by [Mount Vernon] to defend [Visionaid], resulting from the investigation, adjustment, defense, and appeal of a [c]laim." By defining "defense costs" in this way, the policy creates a duty to pay the costs of defense that is coextensive with the duty to defend. The duty

to defend arises when the insurer is involved in a case at the beginning of the litigation; the duty to pay defense costs arises if the insurer becomes involved in the matter after a verdict has been reached (or, regardless of timing, if there is a conflict of interest between the insurer and insured).

Although courts in some other jurisdictions have distinguished the duty to pay defense costs from the duty to defend, in Massachusetts, where an insurer has both the duty to defend and the duty to pay defense costs, the scope of the duty to defend and the scope of the duty to pay defense costs are identical.  Rubenstein v. Royal Ins. Co. of Am., 429 Mass. 355, 356 (1999) (insurer who failed to comply with its duty to defend was required to pay costs of defense and costs of declaratory judgment action to determine that it had duty to defend); Polaroid Corp. v. Travelers Indem. Co., 414 Mass. 747, 762 (1993) (breach of duty to defend requires insurer to pay defense costs).  Cf. Health Net, Inc. v. RLI Ins. Co., 206 Cal. App. 4th 232, 259 (2012) (duty to pay defense costs, without more, requires insurer to pay for costs of defending only covered claims, while duty to defend requires insurer to defend entire lawsuit, as long as at least one claim is covered).

Because the duty to pay defense costs is coextensive with the duty to defend, we apply the same analysis to question two that we applied to question one, and conclude that the duty to

pay defense costs does not require an insurer to fund the prosecution of any counterclaim on behalf of the insured.[8]

3. <u>Conclusion</u>. We answer the certified questions as follows.

> <u>Question one</u>: An insurer with a contractual duty to defend an insured is not required to prosecute an affirmative counterclaim on the insured's behalf, pursuant to either the contractual language or the "in for one, in for all" rule.

> <u>Question two</u>: The duty to pay defense costs has the same scope as the duty to defend; accordingly, it does not require the insurer to pay the costs of prosecuting a counterclaim on behalf of the insured.

> <u>Question three</u>: Because of our responses to the other questions, we do not reach this question.

The Reporter of Decisions is to furnish attested copies of this opinion to the clerk of this court. The clerk in turn will transmit one copy, under the seal of the court, to the clerk of the United States Court of Appeals for the First Circuit, as the answer to the questions certified, and will also transmit a copy to each party.

---

[8] Because of the decision we reach on the first two questions, we do not reach the third question.

GANTS, C.J. (dissenting, with whom Lenk, J., joins). In answer to the certified questions submitted by the United States Court of Appeals for the First Circuit, the court concludes "that where the insurance policy provides that an insurer has the 'duty to defend any claim' initiated against the insured, the insurer's duty to defend does not require it to prosecute affirmative counterclaims on behalf of its insured." I respectfully disagree. Based on the language of the insurance policy, an insurer's "duty to defend any claim" means the duty to defend the insured in "any proceeding initiated against any Insured . . . seeking to hold such Insured responsible for a Wrongful Act." Where the insured's defense is intertwined with a compulsory counterclaim, where any reasonable attorney defending that proceeding would bring such a compulsory counterclaim, and where the insured agrees that any damages awarded to the insured on that counterclaim will offset any award of damages against the insured that the insurer is required to indemnify, I conclude that an insurer's duty to defend the insured in "any proceeding" includes the duty to prosecute such a compulsory counterclaim.

I agree with the court that, "in interpreting an insurance policy, we begin with the plain language of the policy." Ante at . See Golchin v. Liberty Mut. Ins. Co., 466 Mass. 156, 159-160 (2013) ("We interpret the words of the standard policy

in light of their plain meaning, . . . giving full effect to the document as a whole[,] . . . consider[ing] 'what an objectively reasonably insured, reading the relevant policy language, would expect to be covered' . . ." [citation omitted]).  But where the language of an insurance agreement permits more than one rational interpretation, we apply the interpretation most favorable to the insured.  See Boston Symphony Orch., Inc. v. Commercial Union Ins. Co., 406 Mass. 7, 12 (1989).

Under Mount Vernon Fire Insurance Company's policy with Visionaid, Inc. (Visionaid), the insurer's duty to defend is not limited to defending causes of action arising from a wrongful act as defined in the agreement.  It includes the "duty to defend any Claim to which this insurance applies."  A claim is not defined under the policy as a cause of action; rather, it is defined under the policy as "any proceeding initiated against any Insured . . . seeking to hold such Insured responsible for a Wrongful Act."  Therefore, the duty to defend a claim under the policy means the duty to defend the insured in a proceeding where the insured is alleged to be responsible for a wrongful act covered by the policy.

We have held under our so-called "in for one, in for all" rule that, where a proceeding includes one cause of action alleging a wrongful act covered under a general liability policy, an insurer's duty is not limited to defending that

specific cause of action but encompasses the duty to defend the insured against all the causes of action in that proceeding. See GMAC Mtge., LLC v. First Am. Title Ins. Co., 464 Mass 733, 738 (2013), quoting Liberty Mut. Ins. Co. v. Metropolitan Life Ins. Co., 260 F.3d 54, 63 (1st Cir. 2001) ("Because '[i]t is not uncommon for a lawsuit against an insured to assert some claims that are covered by the insurance policy and others that are not,' the general rule in Massachusetts in the general liability insurance context is that 'an insurer must defend the entire lawsuit if it has a duty to defend any of the underlying counts in the complaint'"); Symplex Techs., Inc. v. Liberty Mut. Ins. Co., 429 Mass. 196, 199 (1999) ("that some, or even many, of the underlying claims may fall outside the coverage does not excuse [the insurer] from its duty to defend").[1]

The "in for one, in for all" rule is needed in general liability policies because it would be impractical and deleterious to an effective defense to parse the various counts and have one attorney appointed by the insurer defend against some and an attorney retained by the insured defend against others. See GMAC Mtge., LLC, 464 Mass at 739, citing A.D. Windt, Insurance Claims and Disputes:  Representation of

---

[1] The "in for one, in for all" rule of general liability insurance defense does not apply to title insurance because "title insurance is fundamentally different from general liability insurance."  GMAC Mtge., LLC v. First Am. Title Ins. Co., 464 Mass 733, 740 (2013).

Insureds & Insurers § 4.13, at 128 (1982) (dividing representation between covered and noncovered claims is impractical); Narragansett Elec. Co. v. American Home Assur. Co., 999 F. Supp. 2d 511, 526 (S.D.N.Y. 2014), rev'd on other grounds 667 Fed. Appx. 8 (2d Cir. 2016) (applying Massachusetts law; "a defense of an action with both covered and uncovered claims may benefit from a unified defense and legal arguments, and it is illogical to separate them based on insurance coverage").  As the California Supreme Court noted in Buss v. Superior Court of Los Angeles County, 16 Cal. 4th 35, 49 (1997):

> "To defend meaningfully, the insurer must defend immediately. . . .  To defend immediately, it must defend entirely.  It cannot parse the claims, dividing those that are at least potentially covered from those that are not.  To do so would be time consuming.  It might also be futile: The 'plasticity of modern pleading' . . . allows the transformation of claims that are at least potentially covered into claims that are not, and vice versa."
> (Citations omitted.)

Without the "in for one, in for all" rule, the insured would be represented by two attorneys who would prepare and respond to discovery and other pretrial motions, prepare and depose witnesses, and try the case.  The attorneys would need to coordinate settlement discussions and pretrial strategy, and at trial might provide separate opening statements and closing arguments, examine witnesses separately, raise separate objections to questions and answers, and proffer separate jury instructions and objections to the judge's instructions.  For

these and other reasons, one prominent insurance defense counsel
has concluded that "[i]n almost all situations it is totally
impracticable to have two lawyers defending the same client."
See Neumeier, Serving Two Masters:  Problems Facing Insurance
Defense Counsel and Some Proposed Solutions, 77 Mass. L. Rev.
66, 80 (1992).  Such duplication, of course, also would lead to
longer, more expensive litigation and adjudication, and would
place greater strain on judicial resources.[2]

The same reasoning that yielded the "in for one, in for
all" rule compels the conclusion that the insurer's duty to
defend a proceeding includes an obligation to prosecute
compulsory counterclaims that are intertwined with the insured's
defense, where any reasonable attorney defending that proceeding
would bring such a compulsory counterclaim, and where the
insured agrees that any damages awarded to the insured on that
counterclaim will offset any award of damages against the
insured that the insurer is required to indemnify.  In such
circumstances, the insurer cannot reasonably fulfil its duty to

---

[2] Without the "in for one, in for all" rule, the presence of
two attorneys separately representing the defendant might also
cause a jury to infer that at least some portion of liability is
covered by an insurer.  We generally do not allow plaintiffs to
introduce evidence demonstrating that the defendant is covered
by insurance because such evidence may "lead to undeserved
verdicts for plaintiffs and exaggerated awards which jurors will
readily load on faceless insurance companies supposedly paid for
taking the risk."  Goldstein v. Gontarz, 364 Mass. 800, 808
(1974), citing 2 J. Wigmore, Evidence § 282(a) (3d ed. 1940).
See Mass. G. Evid. § 411 (2017).

defend the insured in the proceeding without also prosecuting such counterclaims because it would be impractical and deleterious to an effective defense to fail to do so.

The facts of this case amply demonstrate why this is true. As the court notes, Visionaid, through the insurer's appointed attorney, filed an answer identifying the suspected misappropriation of company funds by one of its employees, Gary Sullivan, as a defense to Sullivan's claim of a wrongful termination based on age discrimination. There is no dispute that Visionaid's affirmative claim for misappropriation of company funds is a compulsory counterclaim that Visionaid must either timely bring or waive. See Mass. R. Civ. P. 12 (a) (1), 365 Mass. 754 (1974); Mass. R. Civ. P. 13 (a), as amended, 423 Mass. 1405 (1996). Visionaid's defense is intertwined with the compulsory counterclaim because, if Visionaid can prove that it terminated Sullivan because it learned that he was stealing company funds, it will defeat Sullivan's claim that his termination was motivated by age discrimination. Even if Sullivan were to prevail on his age discrimination claim because Visionaid did not know of Sullivan's theft until after his termination, Visionaid might still be able to limit the scope of damages that Sullivan can recover because an employee who suffered a discriminatory termination might not be entitled to front pay beyond the date that he or she would have been

terminated for another, legitimate reason, such as stealing company funds. See McKennon v. Nashville Banner Pub. Co., 513 U.S. 352, 361-362 (1995); Springfield v. Civil Serv. Comm'n, 469 Mass. 370, 378 n.14 (2014). No reasonable attorney representing a defendant in this proceeding under these circumstances would fail to file this compulsory counterclaim. Prosecuting such a counterclaim would be entirely consistent with the defense, and would substantially strengthen the insured's negotiating position, as reflected in this case by the plaintiff's willingness to dismiss his complaint in return for a release from Visionaid.[3] Where the insured agrees that any award of damages arising from the compulsory counterclaim would offset any such award arising from the complaint that the insurer would be obligated to indemnify, a successful compulsory counterclaim would benefit both the insured and the insurer.

The court takes a narrower view of the duty to defend by focusing on the meaning of the word "defend" in isolation and declaring that, "in the language of Visionaid's contract, the essence of what it means to defend is to work to defeat a claim

---

[3] Under the insurance policy, the insurer "has the right to . . . negotiate the settlement of any Claim whether within or above Retention." Where the terms of any settlement for the insured would be significantly and favorably affected by the existence of a compulsory counterclaim that is intertwined with the defense, the insurer's obligation to act in good faith towards its insured in settlement negotiations suggests an obligation to bring such a counterclaim.

that could create liability against the individual being defended." Ante at   . I take a broader view of the duty to defend because I focus on what it means to defend a proceeding, which is the duty the insurer agreed to assume in the insurance contract. Because the duty to defend a "claim" under the contract means to defend the insured in any proceeding where a wrongful act is alleged, not simply to defend the insured against the causes of action alleging wrongful acts, the broader view of the duty to defend includes the duty to prosecute compulsory counterclaims that are intertwined with the insured's defense. This broader view is consonant with what any reasonable attorney representing the insured would do to defend a proceeding; the narrower view is not.

The concerns raised by the court if we were to recognize a duty to prosecute a counterclaim within the scope of the duty to defend do not apply where that duty is limited to the prosecution of compulsory counterclaims that are intertwined with the insured's defense, where any reasonable attorney defending that proceeding would bring such a compulsory counterclaim, and where the insured agrees that any damages awarded to the insured on that counterclaim will offset any award of damages against the insured that the insurer is obliged to indemnify. This limited duty would not expand the total number of counterclaims brought by insureds, because it is

limited to compulsory counterclaims that must be brought or waived. See ante at   . Nor would it result in any significant increase in litigation between insured parties and insurers over who must prosecute the counterclaim because it will be clear in most cases whether a compulsory counterclaim that any reasonable attorney defending that proceeding would bring is intertwined with the insured's defense. See id. Nor would it "misalign[] the interests of the party who stands to benefit from the counterclaim (the insured) and the party who bears the cost of prosecuting the counterclaim (the insurer)," see ante at   , because the insurer would be obligated to prosecute the compulsory counterclaim only where the insured agrees that any award of damages arising from the compulsory counterclaim would offset any such award arising from the complaint that the insurer would be obligated to indemnify.

The court also notes that "courts in a number of other jurisdictions have considered similarly worded insurance policies, and have reached a similar determination that the meaning of 'defend' is not ambiguous" and excludes the prosecution of any counterclaim. See ante at   . But, as the court also notes, other courts in other jurisdictions have determined that the meaning of the word "defend" in the insurance contract was ambiguous, and have held that an insurer's duty to defend may include the prosecution of certain

counterclaims that are defensive in nature.  See ante at    .
See also Hartford Fire Ins. Co. v. Vita Craft Corp., 911 F.
Supp. 2d 1164, 1183 (D. Kan. 2012); Ultra Coachbuilders, Inc. v.
General Sec. Ins. Co., 229 F. Supp. 2d 284, 289 (S.D.N.Y. 2002);
Oscar W. Larson Co. v. United Capitol Ins. Co., 845 F. Supp.
458, 461 (W.D. Mich. 1993), aff'd, 64 F.3d 1010 (6th Cir. 1995).
In fact, at least one insurance law treatise describes such
decisions as embodying the majority rule.  See 1 D.L. Leitner,
R.W. Simpson, & J.M. Bjorkman, Law and Practice of Insurance
Coverage Litigation § 4.22 (2016 Supp.) ("While some courts rule
otherwise, the general test to determine whether the insurer
must bear such "offense costs" is whether the claims are [1]
defensive in nature, as well as [2] reasonable and necessary to
limit liability" [footnote omitted]).  If the meaning of
"defend" were truly without ambiguity, it is doubtful that so
many courts would define the term so differently.

Because I would interpret the insurer's duty under the
insurance policy to defend the insured in "any proceeding
initiated against any Insured" to include a duty to prosecute
Visionaid's compulsory counterclaim for misappropriation of
funds, I respectfully dissent.