# United States Court of Appeals
## For the First Circuit

No. 15-1351

MOUNT VERNON FIRE INSURANCE COMPANY,

Plaintiff, Appellee,

v.

VISIONAID, INC. f/k/a H.L. Boulton Co. Inc.,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Thompson, Circuit Judge,
Souter, Associate Justice,[*]
and Barron, Circuit Judge.

Kenneth R. Berman, with whom Heather B. Repicky and Nutter, McClennen & Fish LLP were on brief, for appellant.
James J. Duane III, with whom Scarlett M. Rajbanshi and Peabody & Arnold LLP were on brief, for appellee.

June 9, 2016

[*] The Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

THOMPSON, **Circuit Judge**. This dispute between an insurance company and its insured has potentially wide-reaching implications for how liability insurers must conduct themselves in the Commonwealth of Massachusetts. The controversy here revolves around whether an insurer may be required to, as part of its defense of a claim against its insured, provide and pay for counsel to prosecute its insured's counterclaim against the claimant.

In this case, the insured, VisionAid, Inc. ("VisionAid"), is a defendant in a state court suit filed by a former employee, Gary Sullivan, who alleges that his termination was the product of illegal age discrimination. VisionAid's defense includes, among other bases, a claim that it terminated Sullivan not because of his age, but because it discovered that he had misappropriated several hundred thousand dollars of corporate funds. But VisionAid does not want to simply rely on this as a defense. It wants to sue Sullivan for misappropriation in an attempt to recover those funds. Importantly for our purposes, it wants its insurer, Mount Vernon Fire Insurance Company ("Mt. Vernon"), who is covering the defense against the age-discrimination claim, to also cover the prosecution of the misappropriation claim. Whether or not Mt. Vernon has to do this is the crux of this case.

To resolve this issue, we have to look to Massachusetts law, which governs in this diversity action. When we do that, it becomes clear that the dispositive state law questions here have

not been resolved by the Massachusetts Supreme Judicial Court ("SJC").  As a result, we respectfully certify the questions for resolution by the SJC.  See Mass. S.J.C. Rule 1:03.[1]

**I.**

Although the facts in the underlying dispute are contested, the ones bearing on the issues before us today are not.  We'll give a rundown to put the legal issues into perspective.

VisionAid is a Massachusetts-based company, which manufactures and distributes (among other things) lens cleaning and eye safety products.  At the times that matter to us, VisionAid was insured, under an "employment practices" liability policy (the "Policy"), by Mt. Vernon.

In October 2011, VisionAid fired Sullivan, its then-Vice President of Operations.  About a year later, Sullivan brought VisionAid before the Massachusetts Commission Against Discrimination ("MCAD"), alleging that VisionAid's termination of him was based on his age and, therefore, illegal.  VisionAid told Mt. Vernon about the MCAD claim, and Mt. Vernon appointed counsel to defend VisionAid in that forum.  Counsel sought to defend the

---

[1] Neither party requested that we certify questions to the SJC; VisionAid did ask the district court to do so but the court denied the motion.  The parties were, however, advised that this court was inclined to seek certification on its own initiative, as it is permitted to do, and, at our request, they provided proposed certification questions.  See Mass. S.J.C. Rule 1:03 § 2 (providing that this court may invoke this rule upon its own motion).

- 3 -

claim by arguing that VisionAid fired Sullivan because of legitimate non-discriminatory reasons, namely his sub-par performance and misappropriation of company funds.

Settlement negotiations proved fruitless. Sullivan, who had started with a demand of $400,000, repeatedly reduced this number (bottoming out at $5,000) before he eventually told VisionAid's appointed counsel that he would walk away with no money at all if VisionAid would agree to sign a mutual release. VisionAid was unwilling to do this as it still wanted to go after Sullivan for the allegedly stolen money and, as such, it did not consent to the settlement. Sullivan voluntarily dismissed his MCAD complaint in February 2013.

A few months later, Sullivan filed an age discrimination complaint (which asserted several additional causes of action) against VisionAid in Massachusetts state court. Mt. Vernon indicated that it would continue to defend VisionAid in the state court action subject to a reservation of rights.[2] The "reservation of rights letter" indicated that counsel appointed in connection with the MCAD proceedings would continue to represent VisionAid in

----

[2] Mt. Vernon advised VisionAid that, in its opinion, Counts I through III of Sullivan's complaint (styled as claims for unlawful termination in violation of the covenant of good faith and fair dealing, breach of contract, and promissory estoppel) were not covered by the Policy. Mt. Vernon did admit, though, that Count IV's allegations of unlawful age discrimination set forth a claim that was covered.

the state court action "unless and until such time that it is determined that there is no coverage under this policy" and that VisionAid had the right to accept or reject this defense.

VisionAid reacted. It asserted that it did not accept Mt. Vernon's reservation of rights and that it would exercise its right to choose its own attorney. Mt. Vernon responded via letter. It withdrew its reservation of rights and, because of this, indicated that appointed counsel would remain VisionAid's defense counsel. The letter also stated that while Mt. Vernon was aware that VisionAid wished to pursue a counterclaim against Sullivan, Mt. Vernon's position was that the Policy was strictly a defense-liability policy and that it was not required pursuant to the Policy to pay for the prosecution of counterclaims or affirmative actions. Mt. Vernon told VisionAid to hire (and pay for) its own lawyer if it wished to pursue the counterclaim.

Mt. Vernon then filed the underlying suit for a declaratory judgment seeking to have the district court decide whether it was required to pay for the prosecution of VisionAid's proposed state-court misappropriation counterclaim.[3] VisionAid answered and

---

[3] The parties to the state court action agreed to stay the action while the coverage issues were worked out. But faced with statute of limitations issues, VisionAid went ahead and answered Sullivan's complaint and filed the counterclaim. The answer was drafted and signed by appointed panel counsel retained by Mt. Vernon. Mt Vernon's panel counsel, however, refused to draft or sign the counterclaim. VisionAid had its independent counsel do this.

counterclaimed.  It sought a declaration that Mt. Vernon's duty to defend against Sullivan's lawsuit included the duty to prosecute the misappropriation counterclaim and, on top of that, that VisionAid had the right to be represented by independent counsel for the entire Sullivan action at Mt. Vernon's expense.  On the latter point, VisionAid's theory was that it and Mt. Vernon's interests were no longer aligned.  VisionAid suggested that Mt. Vernon had an interest in diminishing the value of the counterclaim or eliminating it since the counterclaim had become an impediment to settlement with Sullivan refusing to walk away absent a mutual release.

The parties cross-moved for summary judgment.  The district court granted Mt. Vernon's motion, denied VisionAid's, and entered judgment in Mt. Vernon's favor.  In short, it found that according to the plain language of the Policy, Mt. Vernon was not required to fund an affirmative counterclaim and that this result did not run afoul of any Massachusetts rules of law or create any conflict of interest.  VisionAid filed this appeal.  Before getting into its position, we start with the Policy.

## II.

In pertinent part, the Policy states that it "covers only those Claims first made against the Insured during the Policy Period."  The Policy goes on to state that Mt. Vernon agrees that it "will pay on behalf of [VisionAid], . . . Loss for which this

coverage applies that [VisionAid] shall become legally obligated to pay because of Claims first made against [VisionAid]."  That section also says that Mt. Vernon "has the right and duty to defend any Claim to which this insurance applies."  "Claim" is defined as "any written notice received by [VisionAid] that any person or entity intends to hold [VisionAid] responsible for a Wrongful Act," or "any proceeding initiated against [VisionAid], . . . seeking to hold [VisionAid] responsible for a Wrongful Act."  "Wrongful Act" is defined as "any actual or alleged act of" discrimination, harassment, retaliation, etc., "committed or allegedly committed by [VisionAid]."

The Policy also says that "Defense Costs shall be applied against the Retention."  "Defense Costs" is defined as the "reasonable and necessary legal fees and expenses incurred by the [Mt. Vernon], or by any attorney designated by [Mt. Vernon] to defend [VisionAid], resulting from the investigation, adjustment, defense and appeal of a Claim."

## III.

VisionAid contends that the district court got it wrong.  It argues that the Policy language establishes that its counterclaim against Sullivan is covered.  According to VisionAid, while the Policy provides that "Defense Costs" include the "fees and expenses incurred by [Mt. Vernon] . . . to defend [VisionAid]," the Policy does not elaborate on what is included in such a defense.  One

- 7 -

reasonable interpretation, VisionAid suggests, is that it includes "all work a defense lawyer would typically do in the defense of a client, including prosecuting counterclaims that would defeat liability or diminish damages." Since "defense" is thus susceptible to more than one reasonable interpretation, VisionAid argues, the Policy is ambiguous and under Massachusetts law an ambiguous insurance agreement is to be interpreted in the light more favorable to the insured.

VisionAid also argues that under Massachusetts's "in for one, in for all" or "complete defense" rule, Mount Vernon's duty to defend includes prosecuting the counterclaim. Under that rule, "an insurer must defend the entire lawsuit if it has a duty to defend any of the underlying counts in the complaint." Liberty Mut. Ins. Co. v. Metro. Life Ins. Co., 260 F.3d 54, 63 (1st Cir. 2001) (emphasis added); see GMAC Mortg., LLC v. First Am. Tit. Ins. Co., 985 N.E.2d 823, 827-28 (Mass. 2013) (providing a more detailed description of the rule).

On top of all this, VisionAid persists that it and Mt. Vernon have conflicting interests because the counterclaim is impeding it from reaching an accord with Sullivan since he is unwilling to settle without a mutual release. According to VisionAid, the only workable solution, and indeed the one Massachusetts law dictates, is that it be allowed to select its own attorney (whose fees shall be paid by Mt. Vernon).

- 8 -

Mt. Vernon disagrees on all points. It argues that the Policy language clearly states that it only provides coverage for claims brought against VisionAid and for support it points to the first paragraph of the Policy, which states: "This Policy covers only those Claims first made against [VisionAid] during the Policy Period." It also suggests that the term "Defense Costs," despite what VisionAid says, is not ambiguous and is specifically limited to expenses resulting from the defense of a claim as defined by the Policy.

As for Massachusetts's "in for one, in for all" rule, Mt. Vernon theorizes that it does not include a duty to prosecute VisionAid's counterclaim because the rule is limited to the defense of covered and uncovered claims asserted against an insured. It avers that the only time an insurer may be required to prosecute a counterclaim on behalf of an insured is "when that counterclaim will be asserted for the purpose of defeating or offsetting liability as to the claims that trigger coverage under the policy." And VisionAid's counterclaim, Mt. Vernon argues, is largely unrelated to the defense of the age discrimination claim, seeks to obtain money for VisionAid's sole benefit, and will not serve to defeat or offset liability as to Sullivan's claims.

Finally, Mt. Vernon insists that there is no conflict of interest between its appointed defense counsel and VisionAid such that it should be called on to pay for VisionAid's personal

counsel. It claims that settled Massachusetts law says that an insured is entitled to have its personal counsel handle the defense of a claim only when an insurer is defending under a reservation of rights, which Mt. Vernon no longer is. Mt. Vernon also disputes the proposition that it and VisionAid's interests don't square. It characterizes VisionAid's assertion that Mt. Vernon has an interest in devaluing the counterclaim as counter-intuitive because Sullivan would have little incentive to settle if the counterclaim was weak, and, Mt. Vernon adds, there is no record evidence to suggest that Mt. Vernon has ever sought to so weaken the counterclaim.

With that back-drop in place, we proceed to the issues in play.

## IV.

This case requires us to consider first whether Mt. Vernon (through appointed counsel) owes a duty to VisionAid to prosecute its counterclaim for damages, whether in accordance with the Massachusetts "in for one, in for all" rule or pursuant to the Policy, which provides that the insurer has a "duty to defend any Claim" — i.e., "any proceeding initiated against [the insured]."

Second, we must consider whether Mt. Vernon (again via appointed counsel) owes a duty to fund the prosecution of the counterclaim for damages, where the Policy requires the insurer to cover "Defense Costs," or the "reasonable and necessary legal fees

- 10 -

and expenses incurred by [the insurer], or by any attorney designated by [the insurer] to defend [the insured], resulting from the . . . defense . . . of a Claim."

Third, assuming the existence of a duty to prosecute the counterclaim, in the event it is determined that Mt. Vernon has an interest in devaluing or otherwise impairing the counterclaim, does a conflict of interest arise that entitles VisionAid to select independent counsel to handle both the defense of any covered claims and the prosecution of the subject counterclaim?

"The SJC permits a federal court to certify questions of state law that are 'determinative of the cause then pending in the certifying court' but for which there is no controlling precedent by the SJC." In re Pereira, 791 F.3d 180, 183 (1st Cir. 2015) (quoting Easthampton Sav. Bank v. City of Springfield, 736 F.3d 46, 50 (1st Cir. 2013)). That is precisely the position we find ourselves in. The questions posed above are of course determinative -- their outcome is the very reason the parties are seeking a declaratory judgement -- and they present questions of first impression in Massachusetts. Massachusetts courts have not weighed in on whether an insurer's duty to defend can include affirmative claims by the insured, and what the scope of that duty might be.

While we could attempt to "make an informed prophecy as to the state court's likely stance," Andrew Robinson Int'l, Inc. v.

<u>Hartford Fire Ins. Co.</u>, 547 F.3d 48, 51 (1st Cir. 2008), the factors at play counsel against this. <u>See</u> <u>Easthampton Sav. Bank</u>, 736 F.3d at 52-53 (setting out some additional factors to consider when deciding to certify). The outcome of this case could affect scores of insurance contracts in Massachusetts, insurance is an area of traditional state regulation, and the policy arguments here do not clearly favor one side or the other. Certification is the most prudent course.

**V.**

For the above reasons, we certify the following questions of Massachusetts law to the SJC:

(1) Whether, and under what circumstances, an insurer (through its appointed panel counsel) may owe a duty to its insured -- whether under the insurance contract or the Massachusetts "in for one, in for all" rule -- to prosecute the insured's counterclaim(s) for damages, where the insurance contract provides that the insurer has a "duty to defend any Claim," i.e., "any proceeding initiated against [the insured]"?

(2) Whether, and under what circumstances, an insurer (through its appointed panel counsel) may owe a duty to its insured to fund the prosecution of the insured's counterclaim(s) for damages, where the insurance contract requires the insurer to cover "Defense Costs," or the "reasonable and necessary legal fees and expenses incurred by [the insurer], or by any attorney designated

by [the insurer] to defend [the insured], resulting from the investigation, adjustment, defense, and appeal of a Claim"?

(3) Assuming the existence of a duty to prosecute the insured's counterclaim(s), in the event it is determined that an insurer has an interest in devaluing or otherwise impairing such counterclaim(s), does a conflict of interest arise that entitles the insured to control and/or appoint independent counsel to control the entire proceeding, including both the defense of any covered claims and the prosecution of the subject counterclaim(s)?

The Clerk of this court is directed to forward to the SJC a copy of the certified questions and our opinion in this case, along with copies of the parties' briefs and appendices. We retain jurisdiction over this appeal pending resolution of the certified questions.

So ordered.