NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

16-P-203                                          Appeals Court

 ONEBEACON AMERICA INSURANCE COMPANY  vs.  CELANESE CORPORATION.


No. 16-P-203.

Suffolk.     November 18, 2016. - October 16, 2017.

Present:  Trainor, Meade, & Hanlon, JJ.


Insurance, Defense of proceedings against insured, Insurer's
     obligation to defend.  Contract, Insurance.  Conflict of
     Interest.  Practice, Civil, Summary judgment, Attorney's
     fees.


     Civil action commenced in the Superior Court Department on
March 2, 2010.

     The case was heard by Christine M. Roach, J., on motions
for summary judgment, and an award of attorney's fees was
entered by her.


     Kevin J. O'Connor (Kara A. Loridas also present) for the
plaintiff.
     Michael John Miguel for the defendant.


     TRAINOR, J.  This appeal arises from a series of cross

motions for summary judgment.  The plaintiff, OneBeacon America

Insurance Company (OneBeacon), appeals from so much of the final

judgment as awarded reasonable and necessary defense costs to

its insured, Celanese Corporation (Celanese), that Celanese incurred from April 13, 2009, through May 27, 2011.[1]  On May 27, 2011, a judge of the Superior Court determined that OneBeacon was entitled to take control of Celanese's defense as of April 13, 2009 (see note 1, supra).  The issue on appeal is whether that determination precludes Celanese from receiving any reimbursement for defense of the underlying claims during the period of time when the question of control over the defense was being litigated.  OneBeacon argues that it is not liable for any defense costs incurred by Celanese during that period of time because OneBeacon offered to defend Celanese without a reservation of rights.  Celanese, on cross appeal, contends that the judge committed an abuse of discretion by not awarding the full amount of defense costs that Celanese requested.  We vacate so much of the judgment that held OneBeacon liable for Celanese's defense costs for the period of time at issue, and therefore do not reach the issues raised in Celanese's cross appeal.

Background.  The following undisputed facts are taken from the summary judgment record.  See Augat, Inc. v. Liberty Mut.

---

[1] On April 13 Celanese elected to revert to defense under OneBeacon's general policies.  The parties then engaged in litigation to determine, inter alia, whether, upon its offer to defend Celanese without a reservation of rights, OneBeacon was also entitled to take control of the defense of underlying claims against Celanese.

Ins. Co., 410 Mass. 117, 120 (1991) ("The standard of review of a grant of summary judgment is whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law").

Over the years, Celanese has been subject to numerous legal actions involving claims of bodily injury from asbestos and chemicals allegedly contained in Celanese's products or facilities. In an effort to seek coverage under its insurance policies in April, 2009, Celanese sent a letter to OneBeacon stating that it was terminating the parties' then-existing defense cost-sharing agreements[2] and demanding that OneBeacon instead defend the ongoing asbestos and chemical product injury claims under its original general liability policies.[3] OneBeacon's general policies provided:

> "DEFENSE, SETTLEMENT, SUPPLEMENTARY PAYMENTS.  As respects the insurance afforded by the terms of this policy [OneBeacon] shall:
>
> "A.  defend any suit against [Celanese] alleging bodily injury or property damage, even if such suit is

---

[2] These agreements superseded the defense cost provisions of OneBeacon's general policies and provided that OneBeacon would pay a specified percentage of Celanese's defense costs for certain specified claims. Celanese terminated these agreements as a result of prior litigation with OneBeacon concerning the agreements. That litigation commenced in 2006, and was tried to a jury in 2009. See note 6, infra.

[3] The termination letter was dated February 11, 2009, with the withdrawal effective April 14, 2009.

groundless, false or fraudulent; but [OneBeacon] may make such investigation, negotiation and settlement of any claim or suit as it deems expedient;

"B. pay in addition to the applicable policy limits of liability:

"(1) all expenses incurred by [OneBeacon]."[4]

In response to Celanese's letter, OneBeacon agreed to defend Celanese against the underlying asbestos and chemical product injury claims without a reservation of rights. To this effect, OneBeacon offered to waive any issues of coverage[5] and to indemnify Celanese from any settlements or judgments up to its full liability limits. However, OneBeacon also sought to assume full control of Celanese's defense of these claims.

In response, Celanese refused to cede its control of the defense or replace the counsel it had employed for the past fourteen years with the representation selected by OneBeacon.

---

[4] The general policies also provided that Celanese had a duty of assistance and cooperation with OneBeacon:

"Assistance and Cooperation of the Insured. The insured shall cooperate with [OneBeacon] and, upon [OneBeacon's] request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits. The insured shall not, except at his [sic] own cost, voluntarily make any payment, assume any obligation or incur any expenses other than for such immediate medical and surgical relief to others as shall be necessary at time of accident."

[5] OneBeacon stated that it would defend Celanese in all pending cases that potentially alleged exposure during the policy periods of 1965-1971.

Celanese alleged that because a "demonstrated conflict of interest" existed, it was not required to yield control of its defense.[6]

OneBeacon replied by advising Celanese that, as Celanese's insurer, it did not consent to Celanese's retention of independent counsel and was not contractually obligated to compensate Celanese for such defense costs.

In March, 2010, OneBeacon filed an action for declaratory relief.[7]  A judge entered an order in May, 2011,[8] ruling on the

---

[6] Celanese's letter provided three reasons for which a conflict of interest existed and therefore for refusing to allow OneBeacon to control the defense:  (1) a jury verdict in the 2009 litigation between the parties found OneBeacon and Resolute Management, Inc. - New England Division (OneBeacon's third-party administrator) liable to Celanese under G. L. c. 93A, thus demonstrating those entities' conflict of interest in representing Celanese; (2) OneBeacon's proposal would result in multiple defense firms handling the same cases, where some claims alleged exposures during periods of time not covered by the OneBeacon policies, thus creating a wasteful duplication of effort; and (3) since some of the underlying cases fell outside of OneBeacon's defense obligation, it did not have the right to control the defense.  However, on appeal, it appears that Celanese has withdrawn its second and third arguments alleging a conflict of interest.

As further evidence of OneBeacon's conflict of interest, Celanese argued that, in testimony at the 2009 trial, OneBeacon had "publicly disparaged Celanese for its defense strategy" (which was designed to protect Celanese's reputation).  Celanese argued that its "interests" would be impaired by OneBeacon's strategy of "limit[ing] its [own] financial exposure by settling cases at fair value before incurring significant defense costs," irrespective of the merits of the cases.

[7] OneBeacon sought declarations that:  (1) under its policies, OneBeacon had the right to control the defense of the

parties' cross motions for summary judgment, and declaring that OneBeacon had the right to control the defense of Celanese's underlying claims as a result of its offer to defend without a reservation of rights.[9]  The parties then filed further cross motions for summary judgment on the issues underlying this appeal, particularly whether OneBeacon was liable to Celanese for the defense costs Celanese incurred during the period of April 13, 2009, (when Celanese elected to revert to defense under OneBeacon's general policies) through May 27, 2011 (when the judge ruled that OneBeacon had the right to control

---

Celanese and select counsel as a result of its offer to defend without a reservation of rights; (2) Celanese breached its contractual obligations under the policies by refusing to cede control; and (3) to the extent that OneBeacon's duties were not extinguished by Celanese's actions, OneBeacon's liability is limited to its pro rata share of the cost to defend and indemnify Celanese with respect to the underlying actions.  In response, Celanese claimed that OneBeacon breached its contractual obligations by insisting on controlling Celanese's defense and failing to pay the defense costs Celanese incurred; breached its duty of good faith and fair dealing; and committed unfair and deceptive business practices in violation of G. L. c. 93A.  Celanese also sought a declaratory judgment that, "due to a conflict," it had the right to control its own defense in the underlying actions and that OneBeacon was required to pay all defense costs necessary to carry out that defense.

[8] This order was a part of a series of orders, resulting from several cross motions for summary judgment brought by the parties.

[9] In making this ruling, the judge also found that Celanese did not breach its contractual duties to OneBeacon by refusing to cede control of its defense.

Celanese's defense.[10]  On the further cross motions, the judge ruled that OneBeacon was liable for reasonable and necessary defense costs incurred by Celanese during this period of time as part of OneBeacon's duty to defend.[11]  The judge further referred the issue of the amount of reasonable and necessary legal fees to a special master, and ultimately awarded Celanese $2,435,921.49 in attorney's fees, plus prejudgment interest from May 27, 2011, to May 31, 2013.[12]

Discussion.  Whether OneBeacon is liable for the defense costs incurred by Celanese is dependent on our answer to four questions:  (1) Does OneBeacon have the right to control Celanese's defense if OneBeacon has offered to defend without a reservation of rights? (2) Does Celanese have the right to refuse OneBeacon's control of the defense if a sufficient conflict of interest exists? (3) Does a sufficient conflict of interest exist? and (4) Is OneBeacon liable for defense costs where Celanese has refused OneBeacon's control of the defense?

---

[10] The parties represented to the judge, at a hearing on November 3, 2011, that they had entered into an agreement with respect to defense costs going forward from the date of the May 27, 2011, order.

[11] The judge stated in her order, "By making the offer it did to defend, OneBeacon was not excused from further (and full) performance of this duty."

[12] The judge's award was based on her adoption of the special master's report in full.

1. <u>Insurer's defense without a reservation of rights</u>. Massachusetts courts have not explicitly commented on an insurer's rights in seeking to defend an insured without a reservation of rights. However, such rights are logically inferred from Massachusetts case law that discusses the rights and limitations of an insurer's defense under a reservation of rights.

In Massachusetts, "[w]hen an insurer seeks to defend its insured under a reservation of rights, and the insured is unwilling that the insurer do so, the insured may require the insurer <u>either</u> to relinquish its reservation of rights <u>or</u> relinquish its defense of the insured and reimburse the insured for its defense costs" (emphasis added). <u>Herbert A. Sullivan, Inc</u>. v. <u>Utica Mut. Ins. Co</u>., 439 Mass. 387, 406-407 (2003). In other words, "an insurer may [not] reserve its rights to disclaim liability in a case and at the same time insist on retaining control of its defen[s]e." <u>Three Sons, Inc</u>. v. <u>Phoenix Ins. Co</u>., 357 Mass. 271, 276 (1970) (quotation omitted). Thus, when an insurer offers to defend the insured without a reservation of rights, it may retain control of that defense. See <u>id</u>. at 276-277; <u>Sullivan</u>, <u>supra</u>. See also <u>Mount Vernon Fire Ins. Co</u>. v. <u>VisionAid, Inc</u>., 91 F. Supp. 3d 66, 73 (D. Mass. 2015) (<u>VisionAid</u>) ("[The insured] admits, however, that [the insurer] has already withdrawn its reservation. Accordingly,

[the insurer] has no obligation to relinquish its defense of [the insured] or to permit [the insured] to utilize independent counsel at its expense"); 1 Windt, Insurance Claims & Disputes § 4.25, at 225 (6th ed. 2013) (Windt) (A duty to defend provision "not only obligate[s] the insurance company to provide a defense, but also give[s] it the right to control the insured's defense").

Here, OneBeacon offered to defend Celanese against the remaining asbestos and chemical product injury claims without a reservation of rights. To this effect, OneBeacon offered to waive any issues of coverage and to indemnify Celanese from any settlements or judgments up to its full liability limits. In offering to defend Celanese without a reservation of rights, OneBeacon has the right to control Celanese's defense of those claims. See Three Sons, 357 Mass. at 276-277; Sullivan, 439 Mass. at 406-407. This right to control Celanese's defense includes the authority to choose the counsel who will defend the claims and to make other decisions related to control of the defense that would traditionally be vested in the insured, as a named party in the case. See Sullivan, supra at 407; Northern County Mut. Ins. Co. v. Davalos, 140 S.W.3d 685, 688 (Tex. 2004).

2. Insured's right to justifiably refuse insurer's control of defense when a sufficient conflict of interest exists. While

OneBeacon has a right to control Celanese's defense as a result of its offer to defend without a reservation of rights, such right is not absolute.[13]  See Magoun v. Liberty Mut. Ins. Co., 346 Mass. 677, 684 (1964) ("Nevertheless, the insurer's discretion under the covenant to defend is not unlimited"); Davalos, 140 S.W.3d at 688 ("Under certain circumstances, however, an insurer may not insist upon its contractual right to control the defense").  See also Windt, supra at §§ 4:20, 4:25 (recognizing circumstances where insured may justifiably refuse insurer's control of defense).  Massachusetts courts have recognized that an insured may rightfully refuse the insurer's control of the defense when a conflict of interest arises.  See J. D'Amico, Inc. v. Boston, 345 Mass. 218, 227 (1962); Magoun, 346 Mass. at 685 (recognizing a "possible divergence of interests" between the insurer and the insured).  See also VisionAid, 91 F. Supp. 3d at 73, citing Sullivan, 439 Mass. at 406-407 ("Absent a conflict of interest, in order to entitle an insured to independent counsel at the insurer's expense, an insured must demonstrate that the insurer is defending it under a reservation of rights").  However, Massachusetts courts have

---

[13] Some authorities, however, have stated that there can be no conflict of interest when an insurer offers to defend without a reservation of rights.  See, e.g., Federal Ins. Co. v. MBL, Inc., 219 Cal. App. 4th 29, 45 (2013) ("Without an express reservation of a right under the policy, there can be no conflict of interest based on the application of that exclusion or policy term during the pendency of the action").

not yet addressed the question of what circumstances would create a conflict of interest sufficient to justify an insured's refusal of an insurer's control of the defense when the insurer has offered to defend without a reservation of rights.[14]

Other authorities have shed light on this issue. Circumstances in which a conflict of interest may arise between an insured and an insurer, other than a dispute over the scope of coverage,[15] include: "(1) when the defense tendered is not a

_____

[14] Indeed, the United States Court of Appeals for the First Circuit certified a similar question to the Supreme Judicial Court in 2016. See Mount Vernon Fire Ins. Co. v. VisionAid, Inc., 825 F.3d 67, 72 (1st Cir. 2016) ("Assuming the existence of a duty to prosecute the insured's counterclaim[s] [as a part of the insurer's agreement to defend without a reservation of rights], in the event it is determined that an insurer has an interest in devaluing or otherwise impairing such counterclaim[s], does a conflict of interest arise that entitles the insured to control and/or appoint independent counsel to control the entire proceeding, including both the defense of any covered claims and the prosecution of the subject counterclaim[s]?"). However, because of the Supreme Judicial Court's responses to other certified questions in the case, that question was not reached. See Mount Vernon Fire Ins. Co. v. VisionAid, Inc., 477 Mass. 343, 347-348 (2017).

[15] Massachusetts has "adopted a per se rule that where an insurance company reserves the right to deny coverage for a particular claim, then a conflict of interest between the insurance company and insured exists." Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Bev. Co. of S.C., LP, 433 F.3d 365, 370 (4th Cir. 2005). See Sullivan, 439 Mass. at 406-407. Under this per se rule, "the insured may require the insurer either to relinquish its reservation of rights or relinquish its defense of the insured and reimburse the insured for its defense costs." Id. at 407. We are faced with different circumstances here, where OneBeacon has offered to defend Celanese without a reservation of rights and does not deny that the claims against Celanese are covered under OneBeacon's general policies.

complete defense under circumstances in which it should have been, (2) when the attorney hired by the carrier acts unethically and, at the insurer's direction, advances the insurer's interests at the expense of the insured's, (3) when the defense would not, under the governing law, satisfy the insurer's duty to defend, and (4) when, though the defense is otherwise proper, the insurer attempts to obtain some type of concession from the insured before it will defend." Davalos, 140 S.W.3d at 689 (quotation omitted). See Windt, supra at § 4:25, at 226-228 (recognizing these circumstances as types of conflicts of interest). Another type of conflict of interest arises "if the defense provided by the counsel selected by the insurer was materially inadequate." Id. at § 4:25, at 228. An insured may justifiably refuse an insurer's control of the defense if one of these conflicts of interest exists. In such a circumstance, the insured is entitled to coverage of the costs it incurs by hiring its own counsel to defend the claims against it. See Davalos, supra. See also Windt, supra at § 4:25, at 225-228.

3. Has Celanese demonstrated that a sufficient conflict of interest exists? Celanese suggests that the third type of conflict of interest listed above exists in this case -- that OneBeacon's defense would not satisfy its duty to defend under

governing law. Celanese offers several reasons to support its argument.

Celanese first argues that OneBeacon's defense did not satisfy its duty to defend because it made a "conditional offer [that] required Celanese to terminate . . . counsel [that had been representing Celanese] in these types of chemical cases for the past fourteen years." Despite Celanese's contentions, OneBeacon's offer did not demand the type of extra-contractual conditions that courts have recognized as resulting in a conflict of interest. See Motorists Mut. Ins. Co. v. Trainor, 33 Ohio St. 2d 41, 47-48 (1973); Davalos, 140 S.W.3d at 689. Instead, OneBeacon offered to defend Celanese without a reservation of rights and notified Celanese that it would choose the attorney that would conduct that defense. This is the type of authority that is inherent in the insurer's control of the defense as a part of its duty to defend. See Sullivan, 439 Mass. at 407 ("The policy language not only obligated [the insurer] to defend [the insured], but also, by extension, gave it the right to choose defense counsel"). See also Davalos, supra at 688 ("The right to conduct the defense includes the authority to select the attorney who will defend the claim and to make other decisions that would normally be vested in the insured as the named party in the case").

Celanese also argues that a conflict of interest existed because OneBeacon had demonstrated, through a 2009 jury verdict and trial testimony, that it would put its own interests before Celanese's interests in controlling the defense. Celanese urges that the 2009 jury verdict supports its contentions because the jury found OneBeacon and OneBeacon's third-party administrator liable for unfair and deceptive practices under G. L. c. 93A, in relation to the parties' prior cost-sharing agreement. However, as the judge noted, the violations under G. L. c. 93A found by the jury in the 2009 verdict involved "a very finite issue [concerning] only . . . delayed payments on certain claims." Despite Celanese's contentions, these findings by the jury do not concern the manner in which OneBeacon would conduct its defense and certainly do not "'create[] the inescapable conclusion' that OneBeacon cannot fairly evaluate and defend the underlying claims on their merits." Moreover, any such nexus to a potential conflict of interest is further attenuated where Celanese had terminated the cost-sharing agreement that OneBeacon was found in breach of by the 2009 verdict, and instead, requested that OneBeacon provide a defense against the underlying asbestos and chemical product injury claims under its general policies.

As to the trial testimony complained of by Celanese, the judge reasoned that the record contained no evidence suggesting

that "OneBeacon has a policy of exhausting liability limits rapidly to avoid paying defense costs."[16]  While the statements made by OneBeacon at the 2009 trial did acknowledge the possibility that the amount of indemnity resulting from the defense of the case may exceed the insured's policy limit, this concern does not create a conflict of interest to justify Celanese's refusal of OneBeacon's control of Celanese's defense.

"A conflict of interest does not exist with regard to the conduct of the [insurer's] defense simply because the insured and the insurer have a different view as to the insured's potential liability.  The parties still have a common interest in defense counsel providing a vigorous defense."  Windt, supra at § 4:20, at 205.  See Davalos, 140 S.W.3d at 690 ("[An insurer's] lawyer owes unqualified loyalty to the insured . . . [and] must at all times protect the interests of the insured if those interests would be compromised by the insurer's

---

[16] The judge reasoned:

"'[T]he volume of defense billings in the absence of any tendered indemnity,' is a perfectly legitimate and rational consideration for an insurer in the overall scheme of investigating and assessing a set of risks presented under a policy.  The further statement[,] 'We're entitled to apply indemnity responsible dollars in a way that exhausts our limits' is also on its face a truism.  It does not follow from this testimony, and I cannot infer on the record before me, that as a result of this truism OneBeacon's approach to these claims would necessarily be rapidly to exhaust the limits of liability, regardless of the merits of the claim."

instructions" [quotation omitted]).  Indeed, "[t]o mitigate the danger . . . that the insurer will favor its own interest to the exclusion of the insured's, good faith requires that it make the decision (whether to settle a claim within the limits of the policy or to try the case) as it would if no policy limit were applicable to the claim."  Murach v. Massachusetts Bonding & Ins. Co., 339 Mass. 184, 187 (1959).  Finally, Celanese argues that a sufficient conflict of interest exists to justify its refusal of OneBeacon's control of the defense without a reservation of rights, because the parties have disparate viewpoints as to how the defense should be conducted.  Particularly, Celanese emphasizes its right to protect its reputation in the ongoing asbestos and chemical product litigation.

Celanese argues that a conflict of interest exists because of the parties' dispute "as to the appropriate way to conduct [the] defense of the underlying claims."  The judge summarized the parties' approach to Celanese's defense as follows:

> "Celanese understandably places a high priority on its reputation, and seeks publicly to defend and to rebut any and all claims that its products or premises contain carcinogenic or other poisonous material. OneBeacon's business view is, equally unsurprisingly, a more pragmatic one.  OneBeacon's focus is on reducing the volume and cost of pending cases wherever possible, by seeking out reasonable settlements and

thus incurring and applying indemnity payments towards the policy limits, not solely defense payments."[17]

These opposing tactics of defense, however, do not give rise to a sufficient conflict of interest under our law to justify Celanese's refusal of OneBeacon's control of the defense.

"As with any contract, in interpreting an insurance policy, we begin with the plain language of the policy." Mount Vernon Fire Ins. Co. v. VisionAid, Inc., 477 Mass. 343, 348 (2017). OneBeacon's general policies explicitly provide that OneBeacon will "defend any suit against [Celanese] alleging bodily injury or property damage, even if such suit is groundless, false or fraudulent; but [OneBeacon] may make such investigation, negotiation and settlement of any claim or suit as it deems expedient." Accordingly, "[Celanese] and [OneBeacon] entered into a contractual agreement that [required Celanese to] pay a certain amount of money to insure against a particular risk." Id. at 349. Here, that risk solely concerned claims of "bodily

---

[17] Celanese summarizes its preferred approach as follows:

"Celanese's former assistant general counsel testified regarding Celanese's defense strategy, whereby Celanese would 'defend cases where [the company does not] believe that [its] products hurt somebody [and] defend them to the max, [but] if somebody got hurt by one of our products, then [the company's] strategy would change . . . to try to compensate that particular plaintiff . . . .' This valid strategy [was to] admit[] liability where appropriate, but otherwise vigorously defend[] baseless claims [to] protect Celanese's safety reputation."

injury or property damage" against Celanese, and nothing more. See ibid. Protecting Celanese's reputation was not something that OneBeacon was required to insure or defend. See Golchin v. Liberty Mut. Ins. Co., 466 Mass. 156, 159-160 (2013) ("We interpret the words of the standard policy in light of their plain meaning, . . . giving full effect to the document as a whole[,] . . . consider[ing] what an objectively reasonable insured, reading the relevant policy language, would expect to be covered . . . [and] interpret[ing] the provision of the standard policy in a manner consistent with the statutory and regulatory scheme that governs such policies" [quotation omitted]).

Moreover, our courts have addressed several safeguards available to an insured for protection against unreasonable settlements by an insurer that exceed the insured's policy limits. For example, an insured can sue an insurer for breach of its duty to defend if an insurer fails to settle the underlying suit for the policy limit and a reasonable insurer would have done so in such circumstances. See Boyle v. Zurich Am. Ins. Co., 472 Mass. 649, 659 (2015) ("[The insurer] committed a breach of th[e] duty [to defend] by failing to settle the suit for the policy limit, an endeavor that, the judge found, any reasonable insurer would have undertaken"). Further, an insurer's decision whether to settle or try the case

is measured by good faith.  See Murach, 339 Mass. at 187; Home Indem. Ins. Co. v. Merchants Distribs., Inc., 396 Mass. 103, 105 (1985) ("We have upheld a settlement by an insurance company where the amount paid was fully recoverable from the insured . . . .  We said in that context that the insurer's judgment was final unless the insured showed fraud, negligence, or an absence of good faith in the making of the settlement" [quotation omitted]).  See also Aetna Cas. & Surety Co. v. Sullivan, 33 Mass. App. Ct. 154, 157-158 (1992) ("For example, [under the policy language,] in the case of multiple claims against an insured, good faith settlement with one claimant, or payment of all or part of a judgment favoring one claimant . . . would have the effect of discharging the insurer from defending additional claims beyond the policy limits. . . .  The insurer, having exhausted the policy limits and provided a defense, the insured could not reasonably expect more" [emphasis omitted]).  These protections mitigate, if not alleviate, any conflict of interest that Celanese argues is present in this case.  The insurance policies allow OneBeacon to seek out settlements instead of defending Celanese's reputation by trying each case and denying Celanese's liability.  Here, significantly, Celanese did not obtain insurance for the defense of its reputation.

Since Celanese has not demonstrated that a sufficient conflict of interest exists, it unjustifiably refused OneBeacon's offer to defend without a reservation of rights.

4. Insured's refusal of insurer's control of defense. Despite finding that Celanese had failed to demonstrate that a sufficient conflict of interest existed, the judge concluded that OneBeacon was liable to pay for the defense costs that Celanese incurred from April 13, 2009, when it refused OneBeacon's control of the defense and hired its own counsel, through May 27, 2011, when the judge ruled against Celanese on this point. This conclusion is contrary to authority commenting on an insured's unjustified refusal of an insurer's right to control the defense when defending without a reservation of rights.

Here, Celanese rejected OneBeacon's offer to defend without a reservation of rights and conducted its own defense because it believed that its own attorney would provide a better defense. That was Celanese's right. However, absent a sufficient conflict of interest on the part of OneBeacon, Celanese lost its right to obtain reimbursement for defense costs when it refused to accept OneBeacon's defense, offered without a reservation of rights. See VisionAid, 91 F. Supp. 3d at 73; Davalos, 140 S.W.3d at 690 ("But having rejected the insurer's defense without a sufficient conflict, [the insured] lost his right to

recover the costs of that defense").[18]  See also <u>Finley</u> v. <u>Home Ins. Co.</u>, 90 Haw. 25, 35 (1998) ("If the insured chooses to conduct its own defense, the insured is responsible for all attorneys' fees related thereto. . . .  A contrary holding would effectively nullify our determination that the insurer, even in a reservation of rights situation, retains the contractual right to select the counsel whom it will pay to defend the insured"); Windt, <u>supra</u> at § 4:1A, at 54 ("An insurer should not have to pay for the attorney fees incurred by the insured after the insured has wrongfully rejected the defense tendered by the insurer").

Therefore, OneBeacon satisfied its duty to defend by offering to defend Celanese without a reservation of rights.  As a result of Celanese's unjustified refusal of OneBeacon's

---

[18] Celanese argues that it is entitled to recover defense costs for this interim period because the verdict on the c. 93A claim in the 2009 trial (see note 6, <u>supra</u>) gave Celanese a good faith basis to believe that a sufficient conflict of interest existed.  However, Celanese has not cited persuasive authority to support its position.  Indeed, even the case that Celanese relies on affirms that an insured will be unable to recover defense costs absent a sufficient conflict of interest.  See <u>Partain</u> v. <u>Mid-Continent Specialty Ins. Servs., Inc.</u>, U.S. Dist. Ct., No. H-10-2580, slip op. (S.D. Tex. Feb. 15, 2012), citing <u>Davalos</u>, 140 S.W.3d at 690 ("[I]f an insured rejects an insurer's defense without sufficient conflict, it loses its right to recover the costs of <u>that</u> defense -- the one that it elects to use in the underlying suit.  Here, for example, if [the insureds] elect to proceed in the underlying suit using their own counsel to defend them, they will be unable recover the costs of <u>that</u> defense, as the Court has concluded there was not a sufficient conflict of interest").

control of that defense, OneBeacon is not liable for the attorney's fees that Celanese incurred in conducting its own defense.

Conclusion.  So much of the judgment that awarded Celanese defense costs for the period April 13, 2009, through May 27, 2011, and prejudgment interest is vacated, and the judgment shall be modified to declare that OneBeacon has no duty to reimburse Celanese for defense costs that Celanese incurred during that period of time.  As so modified, the judgment is affirmed.

So ordered.